**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) TIG INSURANCE COMPANY (as successor-in-interest to International Insurance Company), | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 18-cv-GKF-FHM |
| (1) FKI INDUSTRIES INC. (formerly known as Acco Babcock, Inc.), and<br>(2) ACCO MATERIAL HANDLING SOLUTIONS, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

"Jury Trial Demanded"

Plaintiff TIG Insurance Company, as successor-in-interest to International Insurance Company, by and through its undersigned counsel, for its Complaint for Declaratory Judgment against FKI Industries, Inc., formerly known as Acco Babcock, Inc., and Acco Material Handling Solutions., Inc., alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment.

2. Plaintiff TIG Insurance Company is the successor-in-interest to International Insurance Company (hereinafter "Plaintiff" or "TIG").

3. Upon knowledge, information and belief, Defendant FKI Industries was formerly known as Acco Babcock, Inc. ("Acco Babcock") (hereinafter referred to as "FKI Industries"). Upon knowledge, information and belief, in approximately 1987, Acco Babcock was renamed FKI Industries.

4. Upon information and belief, Acco Material Handling Solutions, Inc. ("Acco Material") is a subsidiary of FKI Industries ("FKI Industries" and "Acco Material" are hereinafter collectively referred to as "Defendants").

5. Defendants have asserted rights under International Insurance Company Commercial Comprehensive Catastrophe Liability Policy Number 523-198737-9 ("TIG Policy") issued to Acco Babcock, Inc., including the right to seek insurance coverage pertaining to underlying bodily injury claims and lawsuits allegedly resulting from exposure to asbestos-containing products (the "Underlying Claims"). Defendants have sought, or may seek, a defense, reimbursement of defense costs, indemnification, and/or reimbursement of indemnification costs from TIG under the TIG Policy.

6. TIG seeks this Court's declaration of the respective rights and obligations of TIG and Defendants under the TIG Policy including, but not limited to, declarations that, to the extent that TIG has defense and/or indemnity coverage obligations (if any) to Defendants in connection with the Underlying Claims: the TIG Policy provides coverage, subject to its terms, conditions and exclusions, only to occurrences that result in "bodily injury" that takes place during the policy period; TIG is only responsible for its *pro rata* share of defense and indemnity amounts for the Underlying Claims for the period of the TIG Policy (January 1, 1985 to January 1, 1986), where all underlying and other coverage has been properly exhausted; Defendants and/or other insurers should be allocated a *pro rata* share of defense and indemnity amounts for the Underlying Claims for all other periods, including where Defendants were uninsured, underinsured or self-insured, and/or for lost or missing policy periods, or where Defendants' insurers are insolvent, in liquidation, or are otherwise unable to pay claims, and where one or more of Defendants' insurers have no obligation to provide defense or indemnity coverage.

7. In connection with the Underlying Claims, for which Defendants now claim or may claim coverage in the near future, an actual, justiciable controversy exists between the parties as to which a declaratory judgment setting forth their respective rights and obligations is necessary and appropriate.

## JURISDICTION

8. This is a declaratory judgment action brought pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, *et seq.* to determine that rights of the parties under the TIG Policy.

9. A copy of the TIG Policy is attached as Exhibit 1.

10. TIG is an insurance company organized and existing under the laws of the State of California, with its principal place of business in New Hampshire.

11. Upon information and belief, Defendant FKI Industries, formerly known as Acco Babcock, Inc., is incorporated in New York with its principal place of business in Tulsa County, Oklahoma, and is now doing business in Tulsa County, Oklahoma.

12. Upon information and belief, Defendant Acco Material Handling Solutions, Inc. is incorporated in Delaware with its principal place of business in York, Pennsylvania, and is now doing business in Tulsa County, Oklahoma.

13. Subject matter jurisdiction in this Court is proper as there is complete diversity and the amount in controversy is in excess of $75,000.00.

14. Personal jurisdiction and venue in this Court are proper.

## INSURANCE POLICY AT ISSUE

15. During its years of operations, Acco Babcock, Inc. (n/k/a FKI Industries Inc.) purchased insurance, including the TIG Policy.

16. At issue in this action is the TIG Policy, issued by International Insurance Company (n/k/a TIG Insurance Company) to Acco Babcock, Inc. (n/k/a FKI Industries Inc.), for the policy period January 1, 1985 to January 1, 1986, with limits of $10,000,000, subject to its terms, conditions, and exclusions.

17. The TIG Policy states, *inter alia*: "[S]ubject to the Limit of Liability, Exclusions, Conditions, and other terms of" the TIG Policy, TIG agrees "to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law … for: Bodily Injury Liability … arising out of an occurrence."

18. The TIG Policy defines "Ultimate Net Loss" as "the total of the following sums with respect to each occurrence: (a) all sums which the insured is legally obligated to pay as damages, whether by reason of adjudication or settlement, because of bodily injury … liability to which this policy applies, and (b) all expenses, other than defense settlement provided in Insuring Agreement II, incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any claim covered by this policy or suit seeking such damages, excluding only the salaries of the insured's regular employees. [However, t]his policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance."

19. The TIG Policy defines, in part, "Bodily Injury" as "bodily injury, sickness, disease, disability, shock, mental anguish and mental injury including death at any time resulting therefrom…."

20. The TIG Policy defines, in part, "Occurrence" as "with respect to Bodily Injury Liability … injurious exposure to conditions which results in Bodily Injury … neither expected nor

4

intended from the standpoint of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

21. Subject to the terms, conditions, exclusions and other terms in the TIG Policy, an "occurrence" must happen "during the policy period" to be covered under the TIG Policy.

22. At the time that the TIG Policy was issued to FKI Industries, its insurance broker, Johnson & Higgins, was located at 95 Wall Street, New York, NY 10005, and TIG's managing general agent, L.W. Biegler Inc., was located at 110 William Street, New York, NY 10038. The TIG Policy was brokered out of New York.

23. At the time that the parties entered into the insurance contract at issue, FKI Industries, a multinational manufacturer of industrial and consumer products, was based out of its home office and headquarters at 425 Post Road, Fairfield, Connecticut 06430, as listed on the TIG Policy.

24. At the time that the parties entered into the insurance contract at issue, the corporate offices and departments of FKI Industries, including, among others, its Risk Management Department, were located at 425 Post Road, Fairfield, Connecticut 06430.

25. At the time that the parties entered into the insurance contract at issue, FKI Industries had worldwide operations, and operated through a number of subsidiaries, including Acco Materials.

26. Upon knowledge, information and belief, at the time of issuance, the TIG Policy was delivered to FKI Industries at its headquarters at 425 Post Road, Fairfield, Connecticut 06430.

27. Defendants have advised TIG of certain Underlying Claims and TIG has reserved all rights in response.

### The Underlying Claims

28. Upon information and belief, numerous asbestos bodily injury claims have been asserted by various Underlying Claimants seeking, *inter alia*, compensatory damages and punitive damages, and other legal and/or equitable relief, against Defendants, as a result of alleged exposure to asbestos while working with or near products allegedly distributed and/or manufactured by Defendants.

29. The Underlying Claims generally allege that Defendants were or are engaged in the business of manufacturing and/or supplying asbestos-containing products.

30. The Underlying Claimants generally allege that they were exposed to asbestos and/or asbestos-containing products.

31. As a result of these alleged exposures, the Underlying Claimants allege that they contracted various forms of asbestos-related cancer and/or other bodily injuries including, but not limited to, mesothelioma, lung cancer and asbestosis.

32. The Underlying Claims allege causes of action for, among other things, negligence, failure to warn, breach of expressed/implied warranties, strict liability, intentional tort, conspiracy, misrepresentations and "post-sale duty to warn."

33. Defendants have sought, and may in the future seek, insurance coverage from TIG in connection with some or all of the Underlying Claims.

34. Defendants have asserted that they have incurred in excess of $1,750,000 in defending the Underlying Claims, and will in the future incur additional defense related costs.

35. Defendants have asserted, and may in the near future assert, that TIG is obligated to defend, reimburse defense costs, and/or assume liability for defense costs incurred, or to be incurred, by Defendants, in connection with past, present and future Underlying Claims.

36. Defendants have also asserted, and may in the near future assert, that TIG is or may be obligated to indemnify Defendants for any judgments or settlements in connection with Defendants' alleged liabilities arising out of some or all of the Underlying Claims.

## COUNT I - DECLARATORY RELIEF
### (NO COVERAGE FOR INJURY OUTSIDE THE POLICY PERIOD)

37. TIG incorporates by reference paragraphs 1 through 36 of its Complaint, as though fully set forth herein.

38. The TIG Policy does not provide any coverage for bodily injury that occurs prior to the inception of the TIG Policy (January 1, 1985), and does not provide coverage for bodily injury that occurs subsequent to the expiration of the TIG Policy (January 1, 1986).

39. TIG seeks a declaration that the TIG Policy restricts coverage, subject to its terms, conditions and exclusions, to occurrences that result in "bodily injury" that takes place during the policy period.

## COUNT II - DECLARATORY RELIEF
### (ALLOCATION OF LOSS)

40. TIG incorporates by reference paragraphs 1 through 39 of its Complaint, as though fully set forth herein.

41. TIG seeks a declaration that a *pro rata* allocation method based on "time on the risk" applies to allocating defense and indemnity costs for the Underlying Claims for the entire triggered period during which bodily injury takes place.

42. To the extent that TIG has a defense and/or indemnity coverage obligation (if any) in connection with the Underlying Claims, the obligation is limited to bodily injury that takes place during the policy period of the TIG Policy (January 1, 1985 to January 1, 1986).

43. To the extent that TIG has a defense and/or indemnity coverage obligation (if any) in connection with the Underlying Claims, TIG is only responsible for its *pro rata* share of defense and indemnity costs for the period of the TIG Policy (January 1, 1985 to January 1, 1986), and only after all underlying and other coverage has been properly exhausted.

44. To the extent that TIG has a defense and/or indemnity coverage obligation (if any) in connection with the Underlying Claims, Defendants should be allocated a *pro rata* share of the defense and indemnity costs for any periods where Defendants (or their predecessors) were uninsured, underinsured or self-insured, and/or for lost or missing policy periods, or where Defendants' insurers are insolvent, in liquidation, or are otherwise unable to pay claims, and where one or more of Defendants' insurers have no obligation to defend, pay defense costs and/or pay indemnity coverage.

45. To the extent that TIG has a defense and/or indemnity coverage obligation (if any) in connection with the Underlying Claims, all defense and indemnity costs related to those Underlying Claims must be properly apportioned between TIG, Defendants and/or other insurers to reflect bodily injury that took place during the period of the TIG Policy (January 1, 1985 to January 1, 1986) and bodily injury that took place at all other times, so that a proper *pro rata* allocation is performed for the entire triggered period during which bodily injury takes place.

### COUNT III- DECLARATORY RELIEF
### (DEFENDANTS' CLAIMS ARE OTHERWISE BARRED OR LIMITED)

46. TIG incorporates by reference paragraphs 1 through 45 of its Complaint, as though fully set forth herein.

47. TIG seeks a declaration that, under the terms, conditions and exclusions in the TIG Policy, TIG's obligation for defense and/or indemnity in connection with the Underlying Claims,

which have been asserted, or which may be asserted, is barred or limited for, *inter alia*, one or more of the following reasons:

      a.      The Underlying Claims are not the result of an "occurrence" within the meaning of the TIG Policy;

      b.      TIG's obligation, if any, to provide coverage for defense and/or indemnity is subject to *pro rata* allocation based on "time on the risk" for the Underlying Claims for the entire triggered period during which bodily injury takes place;

      c.      The Underlying Claims are not covered under the TIG Policy to the extent that they arose out of Defendants' willful or intentional conduct;

      d.      The Underlying Claims are not covered under the TIG Policy to the extent that some or all of the insurance recovery sought by, or that will be sought by, Defendants is, or will be, for liability associated with punitive damages, which are not insured under the TIG Policy and/or are uninsurable due to public policy reasons;

      e.      The Underlying Claims are not covered under the TIG Policy to the extent that the applicable limits of liability of the TIG Policy have become impaired or eroded, or become exhausted;

      f.      The Underlying Claims are not covered under the TIG Policy to the extent that the person or entity seeking coverage is not an insured and/or does not have rights under the TIG Policy;

      g.      The Underlying Claims are not covered under the TIG Policy to the extent that there is any obligation relative to the claims for which the insured or any of its insurers may be held liable under any workers' or unemployment compensation, disability benefits or similar law, due to an exclusion in the TIG Policy;

    h. The Underlying Claims are not covered under the TIG Policy due to application of the pollution exclusion in the TIG Policy;

    i. TIG's obligation, if any, to provide coverage for defense costs is payable within, not in addition to, the applicable limit of liability of the TIG Policy.

    j. The Underlying Claims are not covered under the TIG Policy to the extent that Defendants have or do breach the "notice of occurrence" condition contained in the TIG Policy;

    k. The Underlying Claims are not covered under the TIG Policy to the extent that Defendants fail to comply with the "loss payable" condition contained in the TIG Policy; and

    l. The Underlying Claims are not covered under the TIG Policy to the extent that the insuring agreement(s) otherwise does not apply and/or the conditions of the TIG Policy have not been met or satisfied.

## **Prayer for Relief**

WHEREFORE, TIG Insurance Company respectfully requests that this Court enter declaratory judgment as follows:

  A. Declaring the respective rights and obligations (if any) of the parties for defense and indemnification relative to the Underlying Claims under the TIG Policy, including its terms, conditions and exclusions;

  B. Declaring that, to the extent that TIG is held to have coverage obligations (if any) for defense and/or indemnity under the TIG Policy with respect to the Underlying Claims, the TIG Policy restricts coverage, subject to its terms, conditions and exclusions, to occurrences that result in "bodily injury" that takes place during the TIG Policy Period (January 1, 1985 to January 1, 1986);

C. Declaring that, to the extent that TIG is held to have coverage obligations (if any) for defense and/or indemnity under the TIG Policy with respect to the Underlying Claims, the duty is limited to its *pro rata* share of the defense and indemnity costs for the period of the TIG Policy (January 1, 1985 to January 1, 1986), where all underlying and other coverage has been properly exhausted;

D. Declaring that, to the extent that TIG is held to have coverage obligations (if any) for defense and/or indemnity under the TIG Policy with respect to the Underlying Claims, all costs and expenses must be apportioned to reflect bodily injury that occurred during the policy period of the TIG Policy (January 1, 1985 to January 1, 1986) and bodily injury that occurred at all other times, so that a proper *pro rata* allocation is performed for the entire triggered period during which bodily injury takes place;

E. Declaring that, to the extent that TIG is held to have coverage obligations (if any) for defense and/or indemnity under the TIG Policy with respect to the Underlying Claims, Defendants should be allocated a *pro rata* share of the defense and indemnity costs for each of the Underlying Claims at issue, for periods where Defendants (or their predecessors) were uninsured, underinsured or self-insured, and/or for lost or missing policy periods, or where Defendants' insurers are insolvent, in liquidation, or are otherwise unable to pay claims, and where one or more of Defendants' insurers have no obligation to defend, pay defense costs and/or pay indemnity coverage;

F. Declaring that, under the terms, conditions and exclusions in the TIG Policy, TIG's obligation for defense and/or indemnity in connection with the Underlying Claims, which have been asserted, or which may be asserted, against Defendants, are barred or limited for one or more of the reasons set forth in Count III, above;

G. Awarding TIG its costs in this action, including attorneys' fees; and

H. Awarding TIG such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

TIG Insurance Company hereby demands trial by jury as to all issues so triable.

Dated: May 17, 2018

        Respectfully Submitted,

        Richards & Connor

        *s/ Randall J. Lewin*_____
        Phil R. Richards, OBA # 10457
        Randall J. Lewin, OBA #16518
        Casper J. den Harder, OBA # 31536
        ParkCentre Building, 12th Floor
        525 South Main Street
        Tulsa, OK 74103-4509
        Phone # 918-585-2394
        Fax # 918-585-1449
        Email: prichards@richardsconnor.com
           rlewin@richardsconnor.com
           cdenharder@richardsconnor.com

        **ATTORNEYS FOR PLAINTIFF**
        **TIG Insurance Company, as successor-in-interest**
        **to International Insurance Company**