**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TIG INSURANCE COMPANY | ) | |
| (as successor-in-interest to International | ) | |
| Insurance Company), | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-00264-GKF-FHM |
| | ) | |
| FKI INDUSTRIES INC. (formerly | ) | |
| known as Acco Babcock, Inc.), and | ) | |
| ACCO MATERIAL HANDLING | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
|       Defendants. | ) | |

**DEFENDANTS' OPENING MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Michael J. Gibbens (OBA #3339)
**CROWE & DUNLEVY,**
A Professional Corporation
321 South Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Tel:  (918) 592-9840
Fax:  (918) 592-9801
mike.gibbens@crowedunlevy.com

- and -

Barry I. Buchman (DC Bar No. 459663)
Adrian Azer (DC Bar No. 1032731)
**HAYNES AND BOONE, LLP**
800 17th Street, NW, Suite 500
Washington, DC 20006-3962
Tel:  (202) 654-4574
Fax:  (202) 654-4271
barry.buchman@haynesboone.com
Adrian.azer@haynesboone.com
OF COUNSEL

ATTORNEYS FOR DEFENDANTS
FKI INDUSTRIES INC. AND
ACCO MATERIAL HANDLING
SOLUTIONS, INC.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 5

I.   The Parties ................................................................................................................ 5

   A.   The Policyholders' Corporate and Operational History ..................................... 5

   B.   TIG Has No Connection to Oklahoma................................................................. 7

II.   The INA Primary Policies and the TIG Excess Policy ............................................ 7

III.   The Acco Asbestos Claims....................................................................................... 8

IV.   Policyholders' Demands for Payment from INA, Notice to TIG and Other Excess
       Insurers, and the Ensuing Coverage Litigation Between Policyholders and INA ............. 9

   A.   Policyholders' Notice to TIG and TIG's Contention That the TIG Policy Is
         Not Attached ....................................................................................................... 9

   B.   Policyholders' Coverage Dispute with INA and the Ensuing Forum Fight ...................... 9

      1.   Policyholders' Filing of the Pennsylvania Action and INA's Countersuit
            in New York.................................................................................................. 9

      2.   The New York and Pennsylvania Courts Rule That the Coverage Issues Should Be
            Litigated in the Policyholders' Pennsylvania Action.................................... 10

      3.   The Significant Discovery Conducted in the Pennsylvania Action Since the Forum
            Rulings ......................................................................................................... 11

V.   Policyholders' Settlement Efforts with INA and TIG's Filing of This Action.................... 12

   A.   The Settlement Process Between Policyholders and INA and the Resulting Demands on
         TIG for Contribution........................................................................................... 12

   B.   TIG Files This Lawsuit on the Eve of a Tripartite Mediation ........................................... 13

VI.   Policyholders' Failed Efforts to Resolve This Litigation with TIG ................................. 14

ARGUMENT ........................................................................................................................ 15

I.   TIG's Complaint Should Be Dismissed in Favor of the Pending Pennsylvania Action
      Pursuant to the Doctrine of *Forum Non Conveniens* ............................................ 15

   A.   Applicable *Forum Non Conveniens* Standards Are Fatal to TIG's Complaint ................ 15

   B.   The Public-Interest Factors Weigh Heavily in Favor of Dismissal ................................. 16

      1.   Oklahoma Has No Interest in This Case....................................................... 16

      2.   This Action and Administrative Redundancies Will Place an Unnecessary Burden on
            This Court and Oklahoma Jurors .................................................................. 20

   C.   The Private-Interest Factors Weigh Heavily in Favor of Pennsylvania ......................... 20

      1.   The Witnesses are in Pennsylvania and Elsewhere, Not Oklahoma............................. 20

      2.   Other Practical Considerations Make Pennsylvania More Appropriate ...................... 21

II.   TIG's Complaint Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(7) for Failure to Join A Necessary and Indispensable Party – the Primary Insurer, INA .................................... 22

A.   Legal Standard for Dismissal Under Fed. R. Civ. P. 12(b)(7) ........................................... 22

B.   INA Is a Required Party Under Rule 19(a) ....................................................................... 23

C.   INA Cannot Be Joined to This Action .............................................................................. 24

D.   "Equity and Good Conscience" Dictate that This Action Should Not Proceed Without INA ...................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Archangel Diamond Corp. Liquidating Trust v. Lukoil*,
    812 F.3d 799 (10th Cir. 2016) ...................................................................................19

*Cass v. Balboa Capital Corp.*
    2015 WL 1428076 (E.D. Okla. 2015)…………………………………………….....  19

*Century Indem. Co. v. Mine Safety Appliances Co.*,
    398 N.J. Super. 422 (App. Div. 2008) ......................................................................17

*City of Indianapolis v. Chase National Bank of City of New York*,
    314 U.S. 63 (1941)................................................................................................22, 24

*Cont'l Cas. Co. v. Taco Bell Corp.*,
    127 F. Supp. 2d 864 (W.D. Mich. 2001) .................................................................24

*Giro - Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*,
    2012 U.S. Dist. LEXIS 125383 (N.D. Okla. Sept. 5, 2012) .....................................17

*Gschwind v. Cessna Aircraft Co.*,
    161 F.3d 602 (10th Cir. 1998) .................................................................................15

*IMTEC Corp. v. Moore*,
    250 F.R.D. 647 (E.D. Okla. 2008) ...........................................................................23

*IMTEC v. Shatkin*,
    2007 WL 4593506 (E. D. Okla. 2007)................................................................22, 24

*Ins. Co. of the State of PA v. LNC Communities II, LLC*,
    Civ. Action No. 11-CV-00649, 2011 WL 5548955 (D. Col. Aug. 23, 2011) ........................23

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65, 72 (2nd Cir.2001)………………………………………..…………….17

*Littleton v. Commercial Union Assurance Cos.*,
    133 F.R.D. 159 (D. Colo. 1990)…………………………………………..…..23, 24

*Porter v. BNSF Ry. Co.*,
    2008 WL 112033 (E.D. Okla. 2008).........................................................................20

*WildEarth Guardians v. Jewell*,
    2016 U.S. Dist. LEXIS 25221 (D. Colo. March 1, 2016)........................................18

*Witco Corp. v. Travelers Indem. Co.*,
    1994 WL 706076 (D.N.J. Apr. 7, 1994), *aff'd*, 82 F.3d 408 (3d Cir. 1996)...........................23

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) .................................................................................................16

**Other Authorities**

FED. R. CIV. P. 12(b)(7) .........................................................................................................5, 21, 23

FED. R. CIV. P. 19.................................................................................................................5, 22, 23

Defendants Acco Material Handling Solutions, Inc. ("Acco") and FKI Industries Inc. (formerly known as Acco Babcock, Inc.) ("FKI") (collectively, "Policyholders") submit this memorandum of law in support of their Motion to Dismiss the Complaint of Plaintiff TIG Insurance Company (as successor-in-interest to International Insurance Company) ("TIG").

## PRELIMINARY STATEMENT

Policyholders move to dismiss this action pursuant to the doctrine of *forum non conveniens*.  For the past four years (including for two years before TIG ever filed this case), Policyholders and Insurance Company of North America ("INA") – the primary insurance carrier directly underneath TIG's umbrella policy – have been litigating the same insurance coverage issues that TIG raises here, in Pennsylvania state court (the "Pennsylvania Action").[1]  As two courts have already ruled in deciding a similar *forum non conveniens* fight between Policyholders and INA, Pennsylvania is the proper forum in which to litigate these overlapping issues because it is where defendant Acco has been  headquartered for over 100 years; and, Acco is the proper focus because Acco made the historical products that give rise both to the underlying asbestos claims at issue ("Acco Asbestos Claims") and, in turn, to this coverage dispute.[2]

Among other overlapping issues, both this action and the Pennsylvania Action seek to resolve the appropriate allocation of Policyholders' asbestos-related losses.  Policyholders advocate for the "all sums" allocation approach, whereas INA and TIG advocate for the "pro

---

[1] *Acco Material Handling Sols. v. Century Indem. Co.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. 2016)

[2] *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Dec. 30, 2016) (Order Denying INA's Mot. Dismiss) (attached as Buchman Aff. Ex. 13); *Ins. Co. of N. Am. v. Acco Material Handling Sols. Inc.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 1, 2017) (Order Granting Acco and FKI's Mot. Dismiss) (attached as Buchman Aff. Ex. 7).

rata" allocation approach.  Not surprisingly, INA's and TIG's preferred approach would leave the Policyholders with very little, if any, coverage for the Acco Asbestos Claims.

Similarly, both this action and the Pennsylvania Action address the exhaustion status of the INA primary policy underneath the TIG policy.  INA and Policyholders now believe that this INA primary policy is exhausted and that the TIG policy thus has attached; TIG disputes that.

TIG became involved in the coverage dispute after discovery in the Pennsylvania Action revealed that the referenced INA primary policy is exhausted and that TIG is thus INA's co-obligor for amounts at issue in the Pennsylvania Action.  INA asserted that TIG contribute to any amounts awarded to Policyholders in the Pennsylvania Action.  Policyholders, in turn, since have asked TIG to acknowledge that it has those coverage obligations.

On the eve of a tripartite mediation among Policyholders, INA, and TIG that was set to occur in Philadelphia, PA, TIG advised that it was not coming to the mediation and it filed this action instead.  In doing so, TIG only named Policyholders as defendants, conspicuously omitting INA.

Although TIG presumably omitted INA to make this action seem "original," TIG's own Complaint demonstrates that this action is part of a broader tri-partite dispute that includes, among other things, a contribution dispute between INA and TIG.  Those issues have been part of the Pennsylvania Action for over four years.

| Allocation Issue | | |
|---|---|---|
| TIG's Complaint | INA's Contentions in the Pennsylvania Action | INA's Contentions in the New York Action |
| "TIG seeks a declaration that a pro rata allocation method based on 'time on the risk' applies to allocating defense and indemnity costs for the Underlying Acco Asbestos | "Under New York and Connecticut law, however, the insured's defense and indemnity costs are | "The Underlying Defense Costs must therefore be allocated |

| | | |
|---|---|---|
| Claims for the entire triggered period during which bodily injury takes place." Pl.'s Compl. ¶ 41.<br><br>"… all defense and indemnity costs related to those Underlying Claims must be properly apportioned between TIG, Defendants and/or other insurers to reflect bodily injury that took place during the period of the TIG Policy (January 1, 1985 to January 1, 1986) …." *Id.* ¶ 45. | allocated pro rata by time such that each insurer cannot be held liable for more than its proportionate share… [Policyholders] should not be permitted to … try to invoke Pennsylvania law." Def.'s [INA's] Brief in Support of its Mot. Dismiss at *8, *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Mar 31, 2016) | equitably over all years in which each alleged bodily injury took place." Pl.'s [INA's] Compl. ¶ 44, *Ins. Co. of N. Am.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 18, 2016) |

Notably, TIG also is relying on the same assertions that two courts in different states (Pennsylvania and New York) have already rejected.

| Choice of Law Issue | | |
|---|---|---|
| TIG's Complaint | INA's Contentions | Prior Court Rulings |
| "At the time that the TIG Policy was issued to FKI Industries, its insurance broker, Johnson & Higgins, was located at 95 Wall Street, New York, NY 10005, and TIG's managing general agent, L.W. Biegler Inc., was located at 110 William Street, New York, NY 10038. The TIG Policy was brokered out of New York." Pl.'s Compl. ¶ 5. | "The INA Policies were underwritten, brokered, procured, negotiated for, contracted for, and performed in New York…The application of New York law under Pennsylvania choice-of-law principles further militates in favor of dismissal." Def.'s [INA's] Brief in Support of its Mot. Dismiss at *7-8, *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Mar 31, 2016) | "ICNA argues New York is the more appropriate forum because the policies were issued through a New York broker. **This is unpersuasive.**" The New York court focused, instead, on the fact that "ACCO's principal place of business is Pennsylvania, where the products were manufactured." Order Granting [Acco and FKI's] Mot. Dismiss, *Acco Material Handling Sols.*, No. 651468/2016, at *9 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 1, 2017) (emphasis added) |

TIG's Complaint is nothing more than a transparent effort to circumvent prior rulings by both the Pennsylvania and New York courts that Pennsylvania is the proper forum for these issues.  The doctrine of *forum non conveniens* is designed precisely to preclude this type of forum-shopping.

Both the same *forum non conveniens* factors that led to the New York and Pennsylvania decisions in favor of the Policyholders, and some additional factors specific to TIG, warrant the same outcome here – dismissal of this action in favor of Policyholders' first-filed Pennsylvania Action.  Specifically, both the public- and private-interest factors warrant dismissal of this action.

Regarding the public interest factors, neither the underlying products, the Acco Asbestos Claims, nor the insurance policies at issue have any connection to Oklahoma. TIG also has no connection to Oklahoma; it is a foreign plaintiff who sued here on the eve of a mediation that was scheduled for its convenience, to avoid the Pennsylvania Action.  Two of the three remaining entities – Acco and INA – also have no connection to Oklahoma, and both the New York and Pennsylvania courts ruled that Acco's contacts matter the most.  And, although FKI "moved" to Oklahoma in 2010, 25 years after the policy periods at issue, INA unsuccessfully relied on the same fact when trying to avoid litigating this coverage dispute in Pennsylvania.

Regarding the private interest factors, virtually all the witnesses are located outside of Oklahoma – most reside in Pennsylvania.  As courts have held, documents are largely irrelevant in this modern era of technology, but in any event Policyholders and INA already have collected these documents (largely from Pennsylvania) and produced them in the Pennsylvania Action. TIG, which has been administering this dispute from its primary location in New Hampshire, presumably will likewise collect its documents from outside of Oklahoma.

For these reasons, dismissal is appropriate pursuant to the doctrine of *forum non conveniens*.

Further, dismissal is also appropriate pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(7) for failure to join a necessary and indispensable party – INA – pursuant to Fed. R. Civ. P. 19. Courts in the Tenth Circuit have held that a court cannot grant complete relief (as required by Fed. R. Civ. P. 19(a)) between an excess insurer (TIG) and its insured (Policyholders) in the absence of the underlying primary insurer (INA). This is especially applicable here because to determine TIG's coverage obligations will require a determination of whether the INA primary policy is exhausted. Additionally, TIG's violation of Fed. R. Civ. P. 19 is incurable because the presence of INA would defeat diversity – Acco and INA are both Pennsylvania citizens.

Consistent with all of these considerations, Policyholders and INA filed a stipulation allowing Policyholders to amend the Pennsylvania Action to include TIG. Even INA – TIG's co-insurer – agrees with Policyholders that TIG should litigate these issues in Pennsylvania.

In sum, this court need not, and Policyholders respectfully submit should not, accept TIG's invitation to take on the burden of injecting itself into what really is a multiparty dispute that includes another, critical party who is not present. That is especially true given that the issues in dispute are in the discovery process in the Pennsylvania Action.

## STATEMENT OF FACTS

I.   **The Parties**

A.      **The Policyholders' Corporate and Operational History**

For approximately 100 years, Acco has maintained its principal place of business and

manufacturing operations in York, Pennsylvania.[3]   Its manufacturing operations previously included the production of allegedly asbestos-containing products, and it is those products that give rise to the Acco Asbestos Claims.[4]   Acco had several names over the decades, namely, Wright-Hoist Division, Hoist & Crane Division, and Acco Material Handling Products Division.[5] It was ultimately incorporated as Acco Material Handling Solutions, Inc.[6]   No matter its name, Acco has always been based in Pennsylvania.

During this entire period, Acco has operated as "almost a company onto itself" with "a high degree of control over its own affairs."[7]   Consistent with this business model, the York, Pennsylvania headquarters has always governed all of Acco's operations and has served as "the foundation of the Hoist and Crane Division [Acco]."[8]

Acco's parent, FKI, is the successor to the first-named insured (Acco Babcock Inc.) under the policy issued by TIG (the "TIG Policy").[9]   That is the only reason why FKI is in this case and in the Pennsylvania Action.   When TIG issued the TIG Policy, FKI was not based in Oklahoma.   That move happened 25 years later, in 2010.[10]   FKI's move did not affect the autonomy of Acco or its continued presence in Pennsylvania.   For this reason, although INA raised FKI's present location in Oklahoma as a reason why the coverage dispute should not

---

[3] *See* Buchman Aff. Ex. 17 at 7, Acco Advancer; Buchman Aff. Ex. 18 at 4, Acco Hoist & Crane Division History.

[4] *See* Buchman Aff. Ex. 29 at 1-2, Ltr. from B. Buchman, Acco's Counsel, to S. Ascher, INA's Counsel (Dec. 30, 2015).

[5] *See* Buchman Aff. Ex. 19, Minutes of S.E.P. Meeting - Wright Hoist Division (June 22, 1956).

[6] *See* Buchman Aff. Ex. 23, Acco's Certificate of Authority filed with the Pennsylvania Department of State (Mar. 2012).

[7] Buchman Aff. Ex. 20 at 1, Acco Action.

[8] Buchman Aff. Ex. 21 at 2, Welcome to the World of Moving Ideas; *see also* Buchman Aff. Ex. 19; Buchman Aff. Ex. 22 at 9-10, Acco Directory (Oct. 1975).

[9] *See* Pl.'s Compl. ¶ 3-4, 11.

[10] *See* Buchman Aff. Ex. 26, FKI Industries Inc.'s Registration with the Oklahoma Secretary of State (March 2010).

proceed in Pennsylvania, both the New York and Pennsylvania courts still ruled in Policyholders' favor in that prior forum fight.

TIG knew of Acco's corporate history—and therefore the lack of any material connection to Oklahoma—before it commenced this litigation, as Policyholders provided TIG a litany of corporate history information prior to TIG filing this action.[11]  Further, TIG knew of the New York and Pennsylvania court rulings, and the fact that those courts rejected FKI's recent corporate move to Oklahoma as a basis to avoid Pennsylvania.[12]

### B.     TIG Has No Connection to Oklahoma

The TIG policy was issued by TIG's predecessor, which was International Insurance Company – an Illinois corporation with an Illinois principal place of business at the time.[13]  TIG is a California corporation, with its principal place of business in New Hampshire.[14]  Riverstone Claims Management Group, LLC ("Riverstone") is the third-party administrator that handles claims under the TIG policy for TIG.[15]  Riverstone is a Delaware corporation with its principal place of business in New York.[16]

## II.   The INA Primary Policies and the TIG Excess Policy

Policyholders, like many companies, purchased "towers" of commercial general liability insurance.  These towers insured Policyholders for "occurrences" during particular periods of time.  TIG issued an excess, umbrella commercial general liability policy that covers the period

---

[11] *See* Buchman Aff. Ex. 1, E-mail from G. Van Houten, counsel for the Policyholders, to S. Magee, claim analyst at Riverstone Claims Management LLC (Apr. 18, 2018).

[12] *See id.* The court rulings are referenced in Policyholders' mediation statement.  While the mediation statement is confidential and thus not attached here, it was sent to TIG.

[13] *See* Buchman Aff. Ex. 15 at 4 of 13, the TIG Policy that the Policyholders had in their possession prior to TIG's filing of its Complaint.

[14] Pl.'s Compl. ¶ 10.

[15] *See* Buchman Aff. Ex. 31 at 1, Ltr from S. Magee, claim analyst at Riverstone, to R. Janisch, principal at AON Risk Solutions (Jan. 29, 2015).

[16] *See* Buchman Aff. Ex. 33, Riverstone Management Group, LLC's SEC Registration, last accessed on May 27, 2020, at https://sec.report/CIK/0001705948.

of January 1, 1985 to January 1, 1986.[17]  Two INA primary policies covering the policy periods of 1984 and 1985 are involved, and the TIG Policy is directly excess to the second one, which covers the 1985 policy period (the "INA Primary Policy").[18]

The TIG Policy provides $10,000,000 in aggregate and per-occurrence limits over the INA Primary Policy and a $10,000 self-insured retention.[19]  It also expressly references the INA Primary Policy in its Schedule of Underlying Insurance.[20]  The TIG Policy recognizes that TIG was insuring FKI's subsidiaries and divisions, such as Acco in York, Pennsylvania.  Specifically, TIG's underwriting materials note that TIG considered and accounted for the "Material Handling Group" (Acco) and the products it manufactured in its Pennsylvania facility.[21]

## III.   The Acco Asbestos Claims

The Acco Asbestos Claims arise from Acco products made in York, Pennsylvania. Although most of the Acco Asbestos Claims are in West Virginia, eight claims have been brought in Pennsylvania.  No Acco Asbestos Claim has ever been brought in Oklahoma.[22]

Most of the documents and witnesses concerning the Acco Asbestos Claims are also

---

[17] *See* Buchman Aff. Ex. 15; *see also* Buchman Aff. Ex. 14, TIG Policy as attached in the Complaint.

[18] INA issued two primary policies, INA Policy No. ISL 209538 (1/1/84-1/1/85) and INA Policy No. ISL GO 313265 (1/1/85-1/1/86).  INA Policy No. ISL GO 313265 is believed to be exhausted (attached as Buchman Aff. Ex. 16).

[19] *See* Buchman Aff. Ex. 15 at 11 of 13; Buchman Aff. Ex. 14 at 16 of 28.

[20] See Buchman Aff. Ex. 14 at 25 of 28, Schedule A.

[21] *See* Buchman Aff. Ex. 25 at 6, 1985 Umbrella Liability Program Underwriting Materials (Nov. 1, 1984).

[22] *See e.g.,* Buchman Aff. Ex. 28, E-mail from J. Humiston, Arcina Risk Group Consultant, to C. Pisano, Direct Claim Handler Brandywine Group (Sept. 1, 2015). Per the parties' agreement, the Policyholders' status reports on the Acco Asbestos Claims, attached to Mr. Humiston's email, are confidential, so only nonconfidential information is submitted here; Buchman Aff. Ex. 27, Ltr from R. Janisch, principal at AON Risk Solutions, to J. Bonner at Brandywine (Jun. 11, 2014).

located in York, Pennsylvania.[23]  Indeed, when Policyholders produce witnesses for depositions in the Acco Asbestos Claims, they produce employees of Acco in York, Pennsylvania.[24] Policyholders never produce such witnesses in Oklahoma.[25]

**IV.    Policyholders' Demands for Payment from INA, Notice to TIG and Other Excess Insurers, and the Ensuing Coverage Litigation Between Policyholders and INA**

**A.    Policyholders' Notice to TIG and TIG's Contention That the TIG Policy Is Not Attached**

Beginning in 2014, Policyholders sent periodic letters to its excess insurers, including TIG, to provide precautionary notice of certain Acco Asbestos Claims.[26]  The letters noted that such claims were "tendered to the [Insureds'] primary carrier (INA) for handling and defense costs."[27]  In response, TIG stated that the "underlying insurance and all other insurance available to [the Insureds] has not yet been properly exhausted by payment of covered claims."[28]  The "underlying insurance" referenced by TIG is the INA Primary Policy.

**B.    Policyholders' Coverage Dispute with INA and the Ensuing Forum Fight**

**1.    Policyholders' Filing of the Pennsylvania Action and INA's Countersuit in New York**

Policyholders likewise began providing INA notice in 2014 and, in June 2015, Policyholders began extensive discussions with INA regarding coverage for the Acco Asbestos Claims.[29]  INA quickly took the position, among others, that it was only responsible for a *pro*

---

[23] *See id., see also* Buchman Aff. Ex. 24 at 11:15–21, Gordon Dep., *In re: Asbestos Personal Injury Litig.*, No. 03-c-9600, 12-c-904 (W. Va. Cir. Ct. Feb. 11, 2015); Buchman Aff. Ex. 34, E-mail from G. Van Houten, counsel for Policyholders, to C. O'Neill, counsel for INA (Jan. 29, 2018).
[24] *See id.*
[25] *See id.*
[26] *See* Buchman Aff. Ex. 30, Ltr from R. Janisch at Aon Risk Solutions, to S. Magee at Riverstone (Jan. 9, 2015).
[27] *Id.* at 1.
[28] Buchman Aff. Ex. 31 at 5 of 7.
[29] *See* Buchman Aff. Ex. 27.

*rata* share of the costs associated with the Acco Asbestos Claims.[30]  INA did not take the position, however, that any of its policies were exhausted.[31]

On February 16, 2016, Policyholders commenced the Pennsylvania Action after failing to resolve the parties' disagreements.[32]  In response, INA commenced a competing action against Policyholders in New York state court on March 18, 2016.[33]

Policyholders and INA each moved to dismiss or stay the proceeding filed by the other (the "Forum Fight").[34]  INA argued that New York was the proper forum and that New York law should apply because the policies were allegedly issued through a New York broker and that INA allegedly issued the policies out of a New York office – the same assertions that TIG is making in its Complaint here.[35]  By contrast, Policyholders argued that the proper focus, both for the forum and choice-of-law purposes, is Acco – the Pennsylvania entity whose historical products give rise to the Acco Asbestos Claims and thus to the coverage dispute.[36]

### 2.     The New York and Pennsylvania Courts Rule That the Coverage Issues Should Be Litigated in the Policyholders' Pennsylvania Action

In late December 2016, INA's motion to dismiss the Pennsylvania Action was denied,

---

[30] INA initially took the position that its policies' deductibles had not been satisfied.  However, the deductible and allocation issues are one of the same, as the Policyholders' ability to satisfy the Policies' deductibles depends on whether the entire defense costs are allocated to the policies as opposed to across a broader time period. *See* Buchman Aff. Ex. 32 at 5, Ltr from C. Pisano, Direct Claim Handler Brandywine Group, to B. Buchman (August 11, 2015).

[31] *See id.*

[32] *See* Compl., *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Feb. 16, 2016) (attached as Buchman Aff. Ex. 8).

[33] *See* Compl., *Ins. Co. of N. Am.,* No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. March 18, 2017) (attached as Buchman Aff. Ex. 2).

[34] *See* Defs.' [Acco and FKI's] Mot. Dismiss, *Ins. Co. of N. Am.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. May 4, 2016) (attached as Buchman Aff. Ex. 3); Def's [INA's] Mot. Dismiss, *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Mar 31, 2016) (attached as Buchman Aff. Ex. 9).

[35] *See* Def's [INA's] Br. Dismiss at 7, 13, 17, *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Mar 31, 2016) (attached as Buchman Aff. Ex. 9)

[36] *See* Defs.' [Acco and FKI's] Br. Dismiss at 9 – 10 of 31, *Ins. Co. of N. Am.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. May 4, 2016) (attached as Buchman Aff. Ex. 3)

and on March 1, 2017, the New York court granted Policyholders' Motion to Dismiss or Stay the New York Action.[37]   In doing so, the New York court found INA's purported New York connections "unpersuasive" and instead focused on Pennsylvania's overwhelming connection to Acco and to the coverage issues:

> ACCO, although incorporated in Delaware, has had its principal place of business in York, Pennsylvania for approximately 100 years.  Further, all of the products which gave rise to the underlying [Acco Asbestos] claims were manufactured in Pennsylvania….
>
> Here, ACCO's principal place of business is Pennsylvania, where the products were manufactured. Thus, the fact that the policies may have been executed through a New York broker does not demonstrate that New York is the more appropriate forum.[38]

### 3. The Significant Discovery Conducted in the Pennsylvania Action Since the Forum Rulings

With the Forum Fight resolved, Policyholders and INA proceeded to litigate in Pennsylvania.  Through document discovery, the parties exchanged approximately 89,000 pages of documents and answered many interrogatories.[39]  As part of this process, the parties served subpoenas on various third-parties, including brokers and former employees of the respective companies.[40]  Further, the parties briefed and then consensually resolved cross-motions to compel.[41]  And, after resolving those discovery disputes, the parties made supplemental productions and issued supplemental privilege logs.[42]  The parties then prepared for depositions

---

[37] *See* Order Granting Defs.' [Acco and FKI's] Mot. Dismiss, *Ins. Co. of N. Am.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 1, 2017) (attached as Buchman Aff. Ex. 7)
[38] *Id* at *8–9.
[39] *See* Buchman Aff. ¶ 6.
[40] *See* Buchman Aff. ¶ 7.
[41] *See e.g.*, Def.'s [INA's] Mot. Compel, *Acco Material Handling Sols.*, Case No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. Jun 30, 2016); Pls' [Acco and FKI's] Mot. Compel, *id.*; Order Approving Stipulation to Extend Case Management Deadlines, *id.* (Oct. 1, 2018).
[42] *See* Buchman Aff. ¶ 6.

by, among other things, exchanging witness lists and negotiating over the scope and breadth of deposition practice.[43]

In short, Policyholders and INA have engaged in extensive discovery on the issues presented in this action. And, because the Pennsylvania Action has been stayed since early 2018 due to settlement efforts just as with this action (as discussed below), TIG could easily join the Pennsylvania Action. TIG could (1) receive the benefit of the document discovery produced by Policyholders and INA and, (2) make its own document production. Then all three parties could promptly proceed to depositions. Significantly, INA agrees that all parties should proceed in Pennsylvania.[44]

## V.    Policyholders' Settlement Efforts with INA and TIG's Filing of This Action

### A.    The Settlement Process Between Policyholders and INA and the Resulting Demands on TIG for Contribution

In summer of 2017, after conducting the above-referenced discovery, Policyholders and INA slowed down the Pennsylvania Action in order to discuss settlement.[45] Over the ensuing months, INA asserted that TIG should contribute to any amounts paid to Policyholders because the INA Primary Policy was exhausted.[46]

By Spring 2018, Policyholders and INA had not reached a settlement.[47] And, Policyholders believed that INA might implead TIG into the Pennsylvania Action. Thus, Policyholders joined INA in attempting to include TIG in a tripartite settlement process.

---

[43] *See* Buchman Aff. ¶ 7.
[44] *See* Buchman Aff. Ex. 41, Stipulation between Policyholders and INA to file an amended Complaint to add TIG as a defendant in the Pennsylvania Action; Buchman Aff. Ex. 42, Amended Complaint in the Pennsylvania Action.
[45] *See* Buchman Aff. ¶ 8.
[46] *Id.*; *see also* Buchman Aff. Ex. 37, E-mail from C. Pisano, Direct Claim Handler Brandywine Group, to S. Magee (May 18, 2018).
[47] *See* Buchman Aff. ¶ 9.

In early April 2018, INA notified TIG of a "planned mediation."[48]  In response, TIG indicated that it "would like to participate in the discussions in a meaningful way" and "recommended [the parties] choose one of the later dates in May" to mediate to give TIG "time to prepare properly."[49]  INA and Policyholders obliged and the three parties agreed to mediate on May 18, 2018, in Philadelphia.[50]

### B.      TIG Files This Lawsuit on the Eve of a Tripartite Mediation

In the weeks leading up the May 18, 2018 mediation, at TIG's request, INA and Policyholders held calls with TIG and sent TIG a voluminous number of documents.[51] Policyholders diligently provided TIG with Acco Asbestos Claims reports, an insurance coverage chart, corporate history information, their mediation statement, the unpublished case law cited therein, and scores of exhibits.[52]

On May 17, 2018, both the mediator and Policyholders' General Counsel flew to Philadelphia, Pennsylvania for the mediation set for the next day.[53]  Late that afternoon, TIG told the parties it was not coming to the mediation and that same day TIG filed the present action.[54] Despite the previous, seemingly-constructive discussions between TIG and Policyholders' counsel, TIG did not advise Policyholders of TIG's filing when it backed-out of the mediation at the last moment.[55]  Instead, Policyholders learned about the Complaint from another source and

---

[48] *See id.*; Buchman Aff. Ex. 35, E-mail from B. Buchman to S. Magee, claim analyst at Riverstone (April 12, 2018).
[49] *Id.* at 2.
[50] *Id.* at 1.
[51] *See* Buchman Aff. Ex. 1; Buchman Aff. ¶ 10.
[52] *See id.*
[53] Buchman Aff. ¶ 11; *see also* Buchman Aff. Ex. 36 at 4 of 6, E-mail chain from B. Buchman to J. Van Winkle, the third-party mediator (May 18, 2018).
[54] *See id.* at 5 of 6; Buchman Aff. ¶ 12.
[55] *See* Buchman Aff. ¶ 13.

had to pull the Complaint from PACER.[56]

As exemplified in the charts contained in the Preliminary Statement above, TIG's Complaint seeks resolution of (1) the same allocation issue that is at the heart of the dispute between INA and Policyholders (all sums vs. pro-rata) and (2) the same choice-of-law issues that INA previously raised and were addressed by the New York and Pennsylvania courts.

Notwithstanding the overlapping issues, TIG did not name INA as a defendant in this action and did not disclose the Pennsylvania Action to this Court.[57]  Neither TIG's Civil Cover Sheet nor its Complaint mention the Pennsylvania Action.[58]

Worse, TIG filed its Complaint here despite asserting that the law of a foreign state applies to this dispute.  As highlighted by the jurisdictional references made in its Complaint, TIG believes that New York law should apply.[59]  As noted above, two different courts have rejected efforts to litigate the issues raised in TIG's Complaint outside of Pennsylvania.  One of those courts is in New York – the very state whose law TIG seeks to apply.

**VI.**   **Policyholders' Failed Efforts to Resolve This Litigation with TIG**

The day after TIG filed its Complaint, INA wrote to all parties and noted its disapproval of TIG's filing.  INA's claim representative sent an e-mail stating that she "never anticipated that TIG would not be participating in the mediation," and stated that "TIG's last minute decision to not participate in the mediation is short-sighted."[60]  Policyholders similarly expressed their frustration to TIG and noted the vexatious nature of TIG's lawsuit.[61]

---

[56] *See id.*
[57] *See* Pl.'s Compl. (attached as Buchman Aff. Ex. 14).
[58] *See id.*
[59] *See e.g.*, Pl's Compl. ¶¶ 10-14, 41-44, 47.
[60] Buchman Aff. Ex. 37.
[61] *See* Buchman Aff. Ex. 38, E-mail from B. Buchman to S. Magee, claim analyst at Riverstone (May 22, 2018); *see also* Buchman Aff. Ex. 40, Ltr from B. Buchman to P. Richards, counsel for TIG (May 24, 2018).

Nevertheless, Policyholders have been trying to settle with TIG since then, either as part of a bilateral or trilateral process.[62]  As part of that process, this Court graciously has granted the parties' joint requests to extend the deadline for Policyholders to answer, move to dismiss, or otherwise respond to TIG's Complaint.[63]  But as the Court rightly noted in its most recent order, dated April 9th, 2020, there has been insufficient progress towards a settlement.[64]

## **ARGUMENT**

### I.   **TIG's Complaint Should Be Dismissed in Favor of the Pending Pennsylvania Action Pursuant to the Doctrine of *Forum Non Conveniens***

#### A.   **Applicable *Forum Non Conveniens* Standards Are Fatal to TIG's Complaint**

There are two threshold questions in determining *forum non conveniens*: (1) whether there is an adequate alternative forum in which the defendant is amenable to process; and (2) whether foreign law applies.[65]  Here, both preliminary requirements are easily satisfied: (1) an alternative forum exists, *i.e.*, the Pennsylvania Action; and (2) based on TIG's own Complaint, there is no dispute that a foreign law (either Pennsylvania or New York) will apply. Indeed, TIG is not even seeking to apply Oklahoma law despite filing suit here.

As discussed below, this conclusion is buttressed by the public- and private-interest factors that courts consider to determine whether dismissal based on *forum non conveniens* is appropriate.  That is particularly true given that TIG is a foreign plaintiff seeking to apply foreign law.

---

[62] *See* Buchman Aff. Ex. 38; Buchman Aff. Ex. 40, E-mail from B. Buchman to P. Richards, counsel for TIG (June 1, 2018).

[63] Dkt. Nos. 18, 20, 22, 26, 28, 30, 32, 34, and 36.

[64] Dkt. No. 38.  Although Policyholders initially, in May 2018, had noted that it never had demanded payment from TIG, two years have passed since then and both Policyholders and INA now agree that the TIG Policy is attached.

[65] *See Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

**B.    The Public-Interest Factors Weigh Heavily in Favor of Dismissal**

**1.    Oklahoma Has No Interest in This Case**

**a)    TIG Is a Foreign Plaintiff Whose Decision to Sue in Oklahoma Gets Little or No Deference**

**(i)    TIG Has No Connection to Oklahoma**

As discussed above in the Statement of Facts, TIG has no meaningful connection to Oklahoma.  As a foreign plaintiff, its decision to sue here "warrant[s] less deference." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009) ("Although there is ordinarily a strong presumption in favor of hearing the case in the plaintiff's chosen forum, a foreign plaintiff's choice of forum warrants less deference.").[66]

Here, TIG's predecessor that issued the TIG Policy was an Illinois corporation with its principal place of business in Illinois.[67]  TIG now is incorporated in California with its principal place of business in New Hampshire.[68]  Riverstone, the entity that manages claims under the TIG Policy, is a Delaware corporation with its principal place of business in New York.[69]  TIG's choice of this Court would be entitled to little deference based on these facts alone.  As discussed immediately below, TIG's choice of this forum gets **no** deference given its blatant forum-shopping.

**(ii)    TIG Has Engaged in Forum-Shopping to Avoid the First-Filed Pennsylvania Action**

TIG's selected forum is not entitled to any deference because it is not the first-filed action and TIG is engaged in forum-shopping.  As noted above, the Pennsylvania Action initiated by

---

[66] *See also Sinochem Int'l*, 549 U.S. at 430, 127 S.Ct. 1184 ("When the plaintiff's choice is not its home forum ... the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.")

[67] *See* Buchman Aff. Ex. 15 at 4 of 13.

[68] Pl.'s Compl. ¶ 10.

[69] *See* Buchman Aff. Ex. 33.

Policyholders is the first-filed action that seeks to resolve the disputes between Policyholders and the insurers.  TIG was well-aware of the available forum in Pennsylvania and purposefully sought to avoid that forum.[70]

This type of blatant forum-shopping is the type of gamesmanship that *forum non conveniens* principles are designed to preclude.  *See Giro - Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*, 2012 U.S. Dist. LEXIS 125383, *7 (N.D. Okla. Sept. 5, 2012), *citing Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2nd Cir.2001) ("the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws ... or the inconvenience and expense to the defendant resulting from litigation in that forum-the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion"); *see also*, *Century Indem. Co. v. Mine Safety Appliances Co.*, 398 N.J. Super. 422, 440-41 (App. Div. 2008).

### b)   The Other Parties to This Coverage Dispute Have No Relevant Connection to Oklahoma

The other parties to this coverage dispute likewise have no relevant connection to Oklahoma.  Acco has been based in Pennsylvania for the last 100 years and continues to be located there.  INA has always been incorporated in Pennsylvania and has always maintained its principal place of business in Pennsylvania.

Any TIG reliance on FKI's recent move to Oklahoma is unavailing to TIG, as it was to INA in the Forum Fight.  As acknowledged by TIG in its own Complaint, FKI was not based in Oklahoma when it bought the TIG Policy; that move did not happen until 2010, long after the

---

[70] *See* nn. 12 – 13.

policy period.[71]   Indeed, INA unsuccessfully highlighted the same fact to both the New York and Pennsylvania courts.[72]

> **c)** **The Acco Asbestos Claims, and the Products at Issue in Them, Have No Connection to Oklahoma**

Like the parties, the Acco Asbestos Claims have no connection to Oklahoma.  The Acco Asbestos Claims involve bodily-injury claims allegedly arising from the asbestos-containing products of Acco, a Pennsylvania business.  Not a single Underlying Claim has ever been commenced or litigated in Oklahoma.  Additionally, the allegedly asbestos-containing products of Acco were all manufactured in York, Pennsylvania, and the local Pennsylvania court has a special interest in having these controversies resolved there.  *See WildEarth Guardians v. Jewell*, 2016 U.S. Dist. LEXIS 25221, *7 (D. Colo. March 1, 2016) (noting that the "local interest factor [under federal *forum-non-convenience* law]. . . encompasses the important interest in having local controversies decided where the controversy exists" and concluding on that basis that a case involving mining in Utah should be heard in Utah).  Thus, Oklahoma residents have no interest in this coverage dispute.

> **d)** **The Insurance Policies at Issue Have No Connection to Oklahoma**

The TIG Policy at issue has no connection to Oklahoma.  The TIG Policy covers the

---

[71] *See* Pl.'s Compl. ¶ 22-23; Buchman Aff. Ex. 26.

[72] INA presented to the Pennsylvania court nearly identical argument by stating "FKI Industries, is a New York corporation with its principal place of business in Tulsa, Oklahoma….Thus, in reality, Pennsylvania has little or no connection to the contracts at the heart of this action – the INA Policies." INA's Mot. Dismiss at 19, *Acco Material Handling Solutions, Inc.*, No. 2016-SU-000466-89 (Pa. Ct. Comm. Pl., York Cnty. March 31, 2016) (attached as Buchman Aff. Ex. 9); INA also argued that only FKI's domicile during the policy period matters by stating "if there is any dispute about which state's law will apply, it will be either New York law (where the underlying transaction took place) or Connecticut law (where FKI was domiciled when it purchased the policies)." INA's Br. in Opp'n to Pls.' Mot Dismiss, at 22, *Ins. Co. of N. Am.*, No. 651468/2016 (N.Y. Sup. Ct. N.Y. Cnty. May 20, 2016) (attached as Buchman Aff. Ex. 4).

period of 1985 to 1986, long before FKI moving to Oklahoma in 2010.[73]  Further, the TIG Policy was not negotiated in Oklahoma nor issued to an Oklahoma insured.[74]  And no relevant brokers or agents were located in Oklahoma at the time of issuance.[75]  TIG's predecessor, International Insurance Company (which sold the TIG Policy to FKI), also was not located in Oklahoma.[76]

**e)**      **TIG Admits That Oklahoma Law Will Not Apply to This Action**

The fact that all parties – including TIG – agree that Oklahoma law will <u>not</u> apply is another reason this dispute should be dismissed in favor of the Pennsylvania Action.

The court in *Cass v. Balboa Capital Corp.* noted in a *forum non conveniens* analysis that a relevant factor for dismissal is the fact that the court will have to apply a foreign law: "[a]pplying California law in Oklahoma could create a number of difficulties, and the appropriateness of trying the case in a forum familiar with the governing law" supported dismissal of the Oklahoma action.  2015 WL 1428076 at *4 (E.D. Okla. 2015).[77]  Here, no party to this action contends that Oklahoma law applies and, as such, the Court will be faced with the challenge of applying laws of a foreign state to a dispute that already is proceeding elsewhere.

---

[73] *See* Buchman Aff. Ex. 26; Buchman Aff. Ex. 15 at 11 of 13, TIG Policy.
[74] *See* Buchman Aff. Ex. 15.
[75] *Id.*
[76] *Id.* at 4 of 13.
[77] *See also*, *Archangel Diamond Corp. Liquidating Trust v. Lukoil,* 812 F.3d 799, 808 (10th Cir. 2016) (upholding the district court's finding that it would be a burden on the Oklahoma courts and jurors to apply foreign law, particularly when the alternative forum has an interest in seeing its law applied correctly).

**2.** **This Action and Administrative Redundancies Will Place an Unnecessary Burden on This Court and Oklahoma Jurors**

Dismissal is also appropriate as this action places an unnecessary burden on this Court and Oklahoma residents.  The Pennsylvania Action seeks to resolve the exact same issues as those presented here, and the parties in Pennsylvania have already completed written and document discovery and there is no need to replicate those efforts here.[78]  If this action were allowed to proceed, it would create a duplication of efforts—and the corresponding burden on this Court—that is wholly unnecessary.

It also would subject both INA and the Policyholders to the risk of inconsistent adjudications on issues that affect their respective rights and obligations and those of TIG. Those issues include both the referenced allocation issue and the referenced exhaustion issue.

**C.** **The Private-Interest Factors Weigh Heavily in Favor of Pennsylvania**

The private-interest factors likewise weigh in favor of dismissal.  As discussed below, the first four private-interest factors relate to the ability to obtain evidence – particularly witnesses, and those witnesses and evidence are in Pennsylvania and other places outside of Oklahoma. The last factor relates to other practical considerations and similarly favors dismissal.

**1.** **The Witnesses are in Pennsylvania and Elsewhere, Not Oklahoma**

In evaluating the accessibility to evidence, courts focus on the location and availability of witnesses given that documents are now easily transmitted.[79]  Here, none of the witnesses are located in Oklahoma and many of the witnesses are located in Pennsylvania.

Many of the witnesses regarding the Acco Asbestos Claims and the insurance coverage

---

[78] *See* Buchman Aff. ¶ 7.

[79] *See Porter v. BNSF Ry. Co.*, 2008 WL 112033 at *2 (E.D. Okla. 2008) ("convenience of witnesses is the most important factor in deciding a motion under § 1404(a).").  To the extent that the Court evaluates where documents are located, all the documents relevant to Policyholders' coverage dispute with INA and TIG have already been produced in the Pennsylvania Action and can be re-produced to TIG in that jurisdiction.

disputes are located in Pennsylvania and elsewhere, but none are in Oklahoma.  For example, Jeff Gordon, whom Acco used as a witness in the Acco Asbestos Claims, is in Pennsylvania.[80] Likewise, Acco's national-coordinating counsel for the Acco Asbestos Claims is based in Ohio, not Oklahoma.   And other witnesses are scattered across the country, but none are in Oklahoma.[81]  For example, as Policyholders noted during the Forum Fight with INA, Bob Miller – FKI's Associate General Counsel at the time the Policies were placed – currently lives in Florida.[82]

Further, TIG's claim-handlers are outside of Oklahoma.   Indeed, the TIG representatives who have interacted with Policyholders on this dispute are both located in New Hampshire.[83]

### 2.      Other Practical Considerations Make Pennsylvania More Appropriate

Several other considerations favor dismissal of this action in favor of the Pennsylvania Action.  As noted above, much of the document discovery necessary to resolve the coverage issues has already occurred in Pennsylvania and can be reproduced; it should not be repeated here.   By joining TIG in the Pennsylvania Action, Policyholders and INA can expediently provide TIG with their document productions already made, and TIG can provide its documents to both concurrently.  All three parties can proceed to depositions together, instead of deposing witnesses in piecemeal fashion across two proceedings halfway across the country from each other.

INA agrees with Policyholders in this regard.   INA has stipulated to Policyholders' amending their Complaint in the Pennsylvania Action to add TIG.

---

[80] *See* Buchman Aff. Ex. 24.
[81] *See id.*; *see also* Buchman Aff. Ex. 34 at 2 of 3.
[82] *See id.*
[83] *See* Buchman Aff. Ex. 31.

## II.     TIG's Complaint Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(7) for Failure to Join A Necessary and Indispensable Party – the Primary Insurer, INA

### A.     Legal Standard for Dismissal Under Fed. R. Civ. P. 12(b)(7)

Fed. R. Civ. P. 12(b)(7) provides that a party may seek dismissal of a complaint based on a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  A party is necessary and <u>must</u> be joined if any of three triggers are met: (1) "if, in that person's absence, the court cannot accord complete relief among existing parties," (2) the absent party claims an interest relating to the subject matter of the action and proceeding in their absence may impair or impede the absent party's ability to protect the interest; or (3) the absent party claims an interest in the subject matter, and proceeding in their absence would "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). Here, as discussed immediately below, all three triggers are met.

If a party is required under Fed. R. Civ. P. 19(a), the Court must then determine if the party can be feasibly joined. FED. R. CIV. P. 19(b).  If joinder is not feasible, the Court must consider, whether "in equity and good conscience," the action should proceed without the required party. FED. R. CIV. P. 19(b).  Because joining INA in this action would defeat the Court's diversity jurisdiction, INA cannot be joined to this action.[84]  Further, given the existence of the Pennsylvania Action and the circumstances surrounding TIG's filing of this action in an

---

[84] As the Supreme Court and the federal court in this district have noted, "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63, 69 (1941), cited by *IMTEC v. Shatkin*, 2007 WL 4593506 at *3-*4 (E. D. Okla. 2007) (holding that the joinder of an indispensable party was not feasible because, if properly aligned, the joinder would defeat diversity jurisdiction and because the party was indispensable, the only recourse was for dismissal of the case. The court examined the real interests of the joinder and the parties in its realignment analysis.)

effort to circumvent it, it would not be consistent with "equity and good conscience" to let this action proceed without INA.

### B.   INA Is a Required Party Under Rule 19(a)

All three components of Federal Rules of Civil Procedure 19(a) are met because the defenses raised by INA and TIG overlap almost completely and are inextricably intertwined.

As the history of this tripartite coverage dispute and TIG's own Complaint make clear, there is a significant dispute between INA and TIG about their relative obligations to Policyholders. Multiple courts in the Tenth Circuit and elsewhere have held that a court cannot grant relief between an excess insurer and its insured without the underlying primary insurer because any findings as to the primary policy—including whether the policy is exhausted—are not binding on the absent insurer. [85]   This principal applies equally here because any ruling by this Court on TIG's obligations would require a resolution of INA's obligations and potentially leave Policyholders vulnerable  "to a substantial risk of incurring . . . inconsistent obligations."[86]

In nearly identical circumstances, other courts have dismissed an action pursuant to Fed. R. Civ. P. 12(b)(7) because an excess insurer's action failed to include as a party the primary insurer pursuant to Rule 19.  For instance, the court in *Ins. Co. of State of Penn.* held that:

> The court finds that [Rule 19(a)(1)(B)(ii)] is satisfied here.  For example, if this court were to order that [Excess Insurer] has no duty to provide coverage because the Primary Policies have not been exhausted, but the court in the Parallel Suit concluded that [Excess Insurer] does owe a coverage obligation because the Primary Policies were exhausted, [Excess Insurer's] compliance with the order issue in this case would necessarily breach the contrary order in the Parallel Suit.

---

[85] *See Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159, 162-163 (D. Colo. 1990) (cited with approval by *IMTEC Corp. v. Moore*, 250 F.R.D. 647, 651 (E.D. Okla. 2008)); *Ins. Co. of State of Penn. v. LNC Communities II, LLC*, 2011 WL 5548955, at *5 (D. Colo. Aug. 23, 2011), *report and recommendation adopted*, 2011 WL 5553808 (D. Colo. Nov. 15, 2011); *Witco Corp. v. Travelers Indem. Co.*, 1994 WL 706076, at *5 (D.N.J. Apr. 7, 1994), *aff'd*, 82 F.3d 408 (3d Cir. 1996)

[86] *Ins. Co. of the State of PA v. LNC Communities II, LLC*, Civ. Action No. 11-CV-00649, 2011 WL 5548955, at *5 (D. Col. Aug. 23, 2011).

*Ins. Co. of State of Penn.*, 2011 WL 5548955, at *9.[87]

Because adjudication of TIG's claims is not practical without the addition of INA, INA is a necessary party under Rule 19(a).  Thus, the Court must examine whether joinder of INA is feasible, which it is not.  *See* Fed. R. Civ. P. 19(b).

### C.      INA Cannot Be Joined to This Action

INA cannot be joined to this Action because both Acco and INA are Pennsylvania citizens.  INA is incorporated in Pennsylvania and has maintained its principal place of business in Philadelphia, Pennsylvania.  If INA is joined to this action, diversity no longer exists and this Court would be adjudicating a dispute between Pennsylvania Policyholders and its Pennsylvania primary insurer, and its foreign excess insurer.[88]  In addition, it would be impractical to join INA to this action given that INA has been litigating the same issues for four years in its and Acco's home state of Pennsylvania.

### D.      "Equity and Good Conscience" Dictate that This Action Should Not Proceed Without INA

Given all the above, including that TIG filed this action on the eve of the scheduled mediation in order to circumvent two prior court rulings, and the corresponding, long-going Pennsylvania Action, equity and good conscience warrant dismissal of this case.  TIG's behavior should not be rewarded to the detriment of Policyholders, who would be forced to litigate a singular, tri-partite coverage dispute in two places.

---

[87] *See also Littleton*, 133 F.R.D. 159 (finding primary insurer was indispensable party in excess coverage action in part because "there is a substantial risk of duplicative litigation"); *Cont'l Cas. Co. v. Taco Bell Corp.*, 127 F. Supp. 2d 864, 870 (W.D. Mich. 2001) (as between insured and two consecutive primary insurers, both insurers were necessary parties as both courts would resolve the issue of when coverage was triggered and could result in conflicting rulings)

[88] *See City of Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63, 69 (1941); *IMTEC v. Shatkin*, 2007 WL 4593506 at *3-*4 (E. D. Okla. 2007).

## **CONCLUSION**

For the foregoing reasons, Policyholders request that the Court dismiss this action and grant any and all such further relief as is just and appropriate.

/s/Michael J. Gibbens
Michael J. Gibbens OBA #3339
**CROWE & DUNLEVY,**
A Professional Corporation
321 South Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Tel:  (918) 592-9840
Fax:  (918) 592-9801
mike.gibbens@crowedunlevy.com

- and -

Barry Buchman, DC Bar No. 459663
Adrian Azer, DC Bar No. 1032731
**HAYNES AND BOONE, LLP**
800 17th Street, NW, Suite 500
Washington, DC 20006-3962
Tel:  (202) 654-4574
Fax:  (202) 654-4271
barry.buchman@haynesboone.com
Adrian.azer@haynesboone.com
OF COUNSEL

ATTORNEYS FOR DEFENDANTS
FKI INDUSTRIES INC. AND
ACCO MATERIAL HANDLING
SOLUTIONS, INC.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 29, 2020, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

Phil R. Richards
Casper J. den Harder
Richards & Connor
ParkCentre Building, 12th Floor
525 South Main Street
Tulsa, OK 74103-4509
prichards@richardsconnor.com
rlewin@richardsconnor.com
cdenharder@richardsconnor.com
**ATTORNEYS FOR PLAINTIFF**

<u>/s/ Michael J. Gibbens</u>