**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) TIG INSURANCE COMPANY | ) | |
| (as successor-in-interest to International | ) | |
| Insurance Company), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-00264-GKF-FHM |
| | ) | |
| (1) FKI INDUSTRIES INC. (formerly | ) | |
| known as Acco Babcock, Inc.), and | ) | |
| (2) ACCO MATERIAL HANDLING | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TIG INSURANCE COMPANY'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Respectfully submitted,

Phil R. Richards, OBA #10457
Casper J. den Harder, OBA #31536
RICHARDS & CONNOR
12th Floor, ParkCentre Bldg.
525 South Main Street
Tulsa, Oklahoma 74103-4509
Telephone: 918/585.2394
Facsimile: 918/585.1449
Email: prichards@richardsconnor.com
           cdenharder@richardsconnor.com

*ATTORNEYS FOR PLAINTIFF*
*TIG INSURANCE COMPANY*
*(AS SUCCESSOR-IN-INTEREST TO INTERNATIONAL*
*INSURANCE COMPANY)*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

    A.    The Doctrine of *Forum Non Conveniens* Only Applies When the Law of Another Nation - Not Another State - is Applicable ............................................... 4

    B.    Even if the Court Were to Apply the Doctrine, TIG's Choice of Forum is Entitled to Great Deference and FKI/Acco Do Not Establish That "Oppressiveness and Vexation" Would Result by Proceeding in Oklahoma. .................................................................................................................................. 6

    C.    The Private Interest Factors Do Not Weigh in Favor of Dismissing TIG's Action .................................................................................................................. 9

        1.    The relative ease of access to sources of proof is a non-factor .................. 9

        2.    The availability of compulsory process for compelling attendance of witnesses is a non-factor. .......................................................................... 10

        3.    The cost of obtaining attendance of willing non-party witnesses is a non-factor. ................................................................................................. 10

        4.    The possibility of a view of the premises is a non-factor. ........................ 11

        5.    Defendants have not identified other practical problems that make trial easier, more expeditious and less expensive in Pennsylvania. .......... 11

    D.    The Public Factors Do Not Support Dismissal of This Case, as This Court Will Have No Difficulty Considering TIG's Declarations Sought Against FKI (Headquartered in Tulsa) and Acco ............................................................ 11

        1.    Defendants have not shown significant administrative difficulties of the courts or burden of jury duty ................................................................. 11

        2.    Defendants have not shown that Pennsylvania has a local interest in this coverage litigation decided there. ....................................................... 13

        3.    Defendants have not shown that "foreign law" applies and this Court can certainly apply domestic law. ............................................................. 15

    E.    Primary Insurer INA is Not a Necessary Party to a Declaration That Pro Rata Allocation Applies to the Excess TIG Policy. ............................................. 15

CONCLUSION...................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799 (10th Cir. 2016) ......... 5, 9, 12

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) .............. 5, 6

*Cass v. Balboa Capital Corp.*, 2015 WL 1428076 (E.D. Okla. Mar. 27, 2015)........................ 5, 6

*Century Indem. Co. v. Mine Safety Appliances Co.*, 398 N.J. Super. 422 (App. Div. 2008) ......... 8

*Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159 (N.D. Okla. 2010).............................................. 8

*Cont'l Cas. Co. v. Taco Bell Corp.*, 127 F. Supp. 2d 864 (W.D. Mich. 2001) ...................... 19, 20

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669 (10th Cir. 2020) ............... 6

*Giro-Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*, 2012 WL 3839529
    (N.D. Okla. Sept. 5, 2012) ................................................................................................. 8

*Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998)....................................... 5, 8, 13

*Ins. Co. of the State of PA v. LNC Communities II, LLC*, 2011WL
    (D. Col. Aug. 23, 2011) ............................................................................................... 18, 19

*Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159 (D. Colo. 1990) ............... 18, 19

*Overseas Military Sales Corp. v. Maryland Port Admin.*, 2009 WL 3756667 (D.N.J. Nov.
    5, 2009) ............................................................................................................................ 6

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .................................................................. 7, 10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)........................... 6, 7, 8

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)................................................................. 6

*Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 512 Pa. 290 (Pa. 1986)................ 21

*WildEarth Guardians v. Jewell*, 2016 WL 796189 (D. Colo. March 1, 2016)....................... 14, 15

*Witco Corp. v. Travelers Indem. Co.*, 1994 WL 706076 (D.N.J. Apr. 7, 1994), *aff'd*, 82
    F.3d 408 (3d Cir. 1996)................................................................................................... 19

*Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166 (10th Cir. 2009) ................................................................ 7

**Statutes**

28 U.S.C. § 1404................................................................................................................. 15

28 U.S.C. § 1404(a) ........................................................................................................... 11

**Other Authorities**

https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00104785-24596728 ................... 2

**Rules**

Fed. R. Civ. P. 19Bright People Foods ................................................................................ *passim*

**Treatises**

14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828 (3d ed. 2007) ...................................................................................................................... 6

14D Wright, A. Miller, & E. Cooper, Federal Practice and Prac. Juris. § 3828.2 (4th ed.) ....... 7, 8

Plaintiff TIG Insurance Company, as successor-in-interest to International Insurance Company (hereinafter "TIG") hereby submits this Memorandum of Law in support of its Opposition to the Motion of Defendants FKI Industries, Inc. (formerly, Acco Babcock, Inc.) and Acco Material Handling Solutions, Inc. ("FKI/Acco") to Dismiss TIG's Complaint based upon *forum non conveniens* (Doc Nos. 39 and 40).

## PRELIMINARY STATEMENT

FKI/Acco's Motion to Dismiss, filed *over two years* after this case was commenced, should be flatly rejected for several reasons. First, and most compelling, the doctrine of *forum non conveniens* applies only when the law of another *country* (foreign law), not another *state* (domestic law), controls. Moreover, the doctrine has been applied to dismiss an action only when a *foreign country*, not *another state*, is the alternative forum. FKI/Acco misstate this controlling law. Here, it is undisputed that foreign law is not implicated whatsoever and FKI/Acco have failed to cite *any* relevant case in the Tenth Circuit dismissing an action in favor of a state court forum. FKI/Acco's Motion to Dismiss should be denied on this basis alone.

Even without this controlling Tenth Circuit law, FKI/Acco's motion would still warrant denial. FKI/Acco have failed to meet their heavy burden of demonstrating that it would be oppressive and vexatious to proceed with this litigation in Oklahoma, where FKI (the alleged successor to the named insured, Acco Babcock, Inc.) has maintained its world headquarters and principal executive offices for many years. TIG filed a coverage suit in this Court, primarily seeking a legal declaration against FKI/Acco that the TIG policy is responsible for a pro rata share of defense and indemnity payments in connection with the underlying asbestos claims. It is a straightforward question of law that does not hinge upon factual disputes like those in the underlying asbestos bodily injury litigation. Moreover, as FKI/Acco acknowledge, the electronic storage and transmission of documents in today's world poses no issue with litigating in Oklahoma

1

(electronic production of documents can, and does, take place anywhere, anytime). Regarding the location of witnesses relevant to the insurance allocation issue, few (if any) would be necessary, but would likely involve a Rule 30(b)(6) corporate representative of FKI/Acco, based in Tulsa, Oklahoma.[1] Certainly, dismissal for *forum non conveniens* is the exception, not the rule, and FKI/Acco have not demonstrated that proceeding in Pennsylvania would be significantly more convenient and better serve justice than proceeding in Oklahoma, where FKI's headquarters have been located for over a decade.

FKI/Acco also contend that, because this case is not the "first filed" action and TIG engaged in forum shopping, TIG's choice to litigate in Oklahoma is entitled to no deference. Yet, FKI/Acco conspicuously fail to explain how the Pennsylvania action could somehow be considered "first filed" when TIG was never a party to that case, despite its pendency for <u>two years</u> before TIG filed this action.[2] Further, there are no "overlapping issues,' as FKI/Acco claims. The Pennsylvania Action was filed by FKI/Acco as a breach of contract case against INA only. TIG was never previously named or joined to that suit, which does not seek any declaration against TIG or the TIG Policy (in fact, FKI/Acco admit that they never demanded anything of TIG). (Doc.

---

[1] William D. Fisher, the FKI executive responsible for this litigation and the principal involved in settlement discussions, is listed as having an office address at the headquarters in Tulsa, OK. *See* Affidavit of Phil. R. Richards, Esq. at ¶4, Ex. 1; (https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00104785-24596728).

[2] After this Oklahoma litigation had been pending for over two years, and after having obtained *11 extensions* to respond from this Court, FKI/Acco did not file an Answer. Rather, FKI/Acco filed a Motion to Dismiss on May 29, 2020, asserting that FKI/Acco's Pennsylvania breach of contract litigation against INA (in which TIG had never been named a party) was "first filed." A few days later, on June 1, 2020, FKI/Acco hurried into the Pennsylvania court and filed an Amended Complaint in which TIG was added to the litigation and sued for breach of contract and anticipatory breach of contract, despite that litigation having proceeded for *four years* without TIG ever having been named a party (by either FKI/Acco or INA).

No. 40 at 15, n. 5).[3]   And it is baffling that FKI/Acco accuses TIG of improper forum shopping and attempting to gain a litigation advantage by filing suit where FKI's global headquarters are located.

In reality, it is FKI/Acco who are now seeking to force TIG to litigate in a state court action, years after it was commenced, in an attempt to somehow bind TIG to rulings FKI/Acco seeks against another party.[4]   Given these facts, FKI/Acco's accusation of forum shopping rings hollow. In any event, putting aside FKI/Acco's baseless accusations, evaluating motives is not required under Tenth Circuit law when determining whether to dismiss an action on *forum non conveniens* grounds.

Lastly, FKI/Acco contend that this case should be dismissed because INA is a necessary party to the litigation.  Not so.  TIG seeks only a declaration regarding its own policy, primarily the applicable allocation methodology.  TIG has no dispute with INA, seeks no declaration as to INA or its policies, and does not challenge INA's position regarding exhaustion of the primary policy below the TIG Policy.  Indeed, just as TIG was not deemed necessary by FKI/Acco in their

---

[3] Even FKI/Acco's recently filed Amended Complaint in Pennsylvania seeks no declarations against TIG as to the allocation methodology applicable to the TIG Policy.  Rather, it asserts breach of contract and anticipatory breach of contract claims against TIG.

[4] While TIG was invited to attend a mediation of FKI/Acco's Pennsylvania breach of contract action against INA, TIG ultimately declined to participate (and contrary to FKI/Acco's representation, that mediation was not scheduled for TIG's "convenience").  Of course, the Pennsylvania action did not involve TIG or its policies and no party to that litigation had asserted any claim against TIG.  As reported to the Court over the last two years, however, TIG and FKI/Acco have been engaged in an exchange of information in conjunction with settlement talks in connection with this litigation. Since over the course of two years no resolution has been reached, FKI/Acco's criticism of TIG's decision not to participate in a mediation prior to that time arising out of a lawsuit concerning another insurer is misplaced.

Pennsylvania breach of contract suit against INA (which proceeded for over 4 years without TIG),[5] INA is not necessary to this case where TIG seeks declarations regarding only the TIG policy.

What remains is the fact that FKI/Acco have delayed <u>more than two years</u> after TIG brought this action, only to now seek dismissal in favor of a supposedly "first filed" Pennsylvania state court action to which TIG was never made a party.[6] Nothing in the applicable law, the facts, or "equity and good conscience" supports FKI/Acco's position. Time to move forward in Oklahoma. TIG's declaratory judgment action against FKI/Acco should proceed in *this* Court – the forum TIG chose two years ago to resolve its dispute with FKI/Acco, and where FKI's world headquarters is located.

## **ARGUMENT**

### A. **The Doctrine of *Forum Non Conveniens* Only Applies When the Law of Another Nation - Not Another State - is Applicable.**

The Tenth Circuit limits application of the doctrine of *forum non conveniens* to cases where the applicable law is determined to be that of a foreign country - not another state. And it has only applied the doctrine to dismiss an action when proceeding in a foreign country - not another state - is the alternative forum. FKI/Acco misinterpret the controlling caselaw, asserting: "There are two threshold questions in determining *forum non conveniens*: (1) whether there is an adequate alternative forum in which the defendant is amenable to process; and (2) whether foreign law

---

[5] Only after 15 pages of briefing and 63 footnotes, do FKI/Acco eventually admit that they *never* demanded payment from TIG (Doc. No. 40 at 15, n. 64). Instead, FKI/Acco chose to proceed in Pennsylvania for breach of contract solely against INA under the INA policies. And while FKI/Acco assert in their motion that "INA asserted that TIG contribute to any amounts awarded to Policyholders in the Pennsylvania Action" and "Policyholders, in turn, since have asked TIG to acknowledge that it has those coverage obligations," (Doc. No. 40 at 2), no evidence or support is cited.

[6] This Oklahoma litigation is, in fact, the "first filed" action involving TIG.

applies." They then conclude an alternative forum exits in Pennsylvania and that "a foreign law (either Pennsylvania or New York) will apply." But the "foreign law" referred to in the threshold question of whether *forum non conveniens* applies is the law of another nation, not another state.

The Tenth Circuit has made it clear that "the court must confirm that foreign law is applicable…because *forum non conveniens* is improper if foreign law is not applicable and domestic law controls." *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (finding Russian law would apply to dispute) (citation and quotations omitted). "[I]f the issue is controlled by American law, the *forum non conveniens* doctrine is inapplicable." *Id.*

FKI/Acco rely upon *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 608 (10th Cir. 1998), but in that case the doctrine was invoked in favor of proceeding in France because French law applied. FKI/Acco also cite to *Cass v. Balboa Capital Corp.*, 2015 WL 1428076, at *1 (E.D. Okla. Mar. 27, 2015), insinuating that the court considered the potential application of California law to be "foreign." The defendant in *Balboa*, however, sought to enforce a forum selection clause that designated California as the place to litigate any disputes. Under those facts, the applicable *forum non conveniens* analysis is significantly different. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) (detailing altered analysis when considering dismissal to enforce a forum selection clause). The forum-selection clause is "given controlling weight in all but the most exceptional cases," plaintiff's choice of forum "merits no weight" and the private interest factors are completely irrelevant. *Id.* at 63; *Balboa*, 2015 WL 1428076, at *4. That analysis is simply inapplicable here where there is no forum selection clause. Here, the Tenth Circuit's requirements for invoking the doctrine remain dispositive, as there is <u>no</u> argument that foreign law (as opposed to the law of another state) is applicable to an interpretation of the TIG

Policy.  Accordingly, FKI/Acco's motion fails as a matter of law and the Court need not address any other arguments asserted by FKI/Acco.[7]

> **B.      Even if the Court Were to Apply the Doctrine, TIG's Choice of Forum is Entitled to Great Deference and FKI/Acco Do Not Establish That "Oppressiveness and Vexation" Would Result by Proceeding in Oklahoma.**

Even if the Court determines that the doctrine of *forum non conveniens* is applicable despite no foreign law applying to this dispute, FKI/Acco do not meet their burden to prove that proceeding in Oklahoma "would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience."  *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009).  "The judicial opinions phrase the matter in varying ways, but make it clear that dismissal for *forum non conveniens* is the exception, not the rule, and that there must be a strong showing that the alternative forum would be significantly more convenient and better serve justice than the

---

[7] The Supreme Court noted that the doctrine of *forum non-conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad," though it noted in dicta that it could apply "perhaps in rare instances where a state or territorial court serves litigational convenience."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9–10 (3d ed. 2007)) (quotations omitted); *see also Overseas Military Sales Corp. v. Maryland Port Admin.*, 2009 WL 3756667, at *1 (D.N.J. Nov. 5, 2009) ("The United States Supreme Court has left open the question of whether *forum non conveniens* can be used in cases in which the alternative forum is a state court.").

FKI/Acco have not cited to any cases in the Tenth Circuit dismissing a case in favor of a state court forum, nor has TIG identified any.  This case, seeking a declaration regarding one insurance policy under domestic law, certainly does not present a "rare" instance in which dismissal is required.  In any event, the Supreme Court did not indicate that another state's law would be considered foreign and the Tenth Circuit recently reiterated that, outside of enforcing a forum selection provision, foreign law means the law of another country.  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669 (10th Cir. 2020) (reiterating requirement that the law of another country and foreign forum apply unless seeking to enforce a forum selection provision. Only in the latter is there no requirement that foreign courts or law be involved because in that circumstance the *forum non conveniens* analysis "is adjust[ed] in significant respects, and the forum selection clause is 'given controlling weight in all but the most exceptional cases.'") (citation omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

one chosen by the plaintiff…." 14D Wright, A. Miller, & E. Cooper, Federal Practice and Prac. Juris. § 3828.2 (4th ed.). TIG's choice of forum is entitled to a "strong presumption" in its favor. *Yavuz*, 576 F.3d at 1172.

FKI/Acco first assert that TIG's choice to litigate in Tulsa, Oklahoma should be afforded little deference because TIG is a "foreign" plaintiff. But there is no support for concluding that TIG, a company domiciled in the United States, is a foreigner. (Doc. No. 2 at 10). FKI/Acco quote *Sinochem*, 549 U.S. at 430, to support their assertion, which stated that: "When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force…." But the plaintiff in that case was from China and the Court was citing to its prior decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981), which noted the "distinction between resident or citizen plaintiffs and foreign plaintiffs" and involved a foreign plaintiff from Scotland. *See also Yavuz*, 576 F.3d 1166 (affording less deference to choice of forum because plaintiff was from Turkey); 14D Wright, A. Miller, & E. Cooper, 14D Federal Practice and Prac. Juris., Forum Non Conveniens—Deference to Plaintiff's Forum Choice § 3828.2 (4th ed.) ("Most federal courts, including the Supreme Court, agree that the plaintiff's selection of a forum is entitled to less deference when the plaintiff (or the real party in interest) is not a United States citizen.").

As with FKI/Acco's misinterpretation of references to "foreign" law, TIG is not a "foreign" plaintiff in the context of *forum non conveniens* and is entitled to the strong presumption that its choice of forum is correct. FKI/Acco have "a heavy burden" to defeat that presumption. *Sinochem*, 549 U.S. at 423. Even if TIG is considered to be a foreigner, FKI/Acco must still show a "strong preponderance in favor of dismissal." *Cessna Aircraft*, 161 F.3d at 608 (noting some degree of deference was still due French plaintiff's choice of forum). They have not done so.

FKI/Acco alternatively assert that, because this case is not the "first filed" action and TIG allegedly engaged in forum shopping, its choice to litigate in this Court is entitled to no deference at all. To be clear, evaluating a plaintiff's motive for filing an action is unique to the Second Circuit (the caselaw cited by FKI/Acco) and is "not required under Tenth Circuit law" when determining whether to dismiss an action under the *forum non conveniens* doctrine. *Giro-Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*, 2012 WL 3839529, at *3 (N.D. Okla. Sept. 5, 2012). Even if it were part of the requisite analysis, the Pennsylvania Action could not have been "first filed" because TIG was not a party to that case. Only now, just days after FKI/Acco filed their motion to dismiss in this Court, and more than two years after TIG brought this action, did FKI/Acco join TIG in the Pennsylvania Action by filing and serving a complaint against it. *See* Compl., attached as Ex. 2.[8]

FKI/Acco cite only to a New Jersey state court decision applying New Jersey law for their position, but the "first filed" action in that case (unlike here) included, of course, the same parties to the second action. *Century Indem. Co. v. Mine Safety Appliances Co.*, 398 N.J. Super. 422, 426 (App. Div. 2008). That court even noted that, to be a first-filed action, it must involve "substantially the same parties, claims and legal issues." *Cf. Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010) (noting "the 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court.") (emphasis added). Not only did the Pennsylvania Action not include TIG, but it necessarily could not have addressed the allocation methodology applicable to the excess TIG Policy without TIG's involvement, which is the central issue in this

---

[8] That Complaint will be the subject of early motion practice seeking its dismissal due to a (truly) prior pending action - this Oklahoma action.

case. Rather, it addressed only the separate and independent obligations of INA under its primary insurance policies.[9]

### C. The Private Interest Factors Do Not Weigh in Favor of Dismissing TIG's Action.

The private factors that must be considered are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Archangel*, 812 F.3d at 806.

### 1. The relative ease of access to sources of proof is a non-factor.

FKI/Acco acknowledge that access to documents is a non-factor. (Doc No. 40 at 20) ("In evaluating the accessibility to evidence, courts focus on the location and availability of witnesses given that documents are now easily transmitted."). Indeed, FKI/Acco's assertion that "much of the document discovery necessary to resolve the coverage issues has already occurred in Pennsylvania and can be reproduced" only further demonstrates there would be no inconvenience regarding access to documents. (*Id.* at 21).[10]

---

[9] Notably, the relief FKI/Acco seek against INA and TIG in Pennsylvania continues to be separate. Four years ago, FKI/Acco sued INA for breach of contract under the INA policies. Now, FKI/Acco has added TIG by suing it for breach of contract (and anticipatory breach of contract) under the separate TIG policy. No declaratory relief, of general applicability, is sought in the Pennsylvania Action.

[10] Defendants' statement, "By joining TIG in the Pennsylvania Action, Policyholders and INA can expediently provide TIG with their document productions already made, and TIG can provide its documents to both concurrently," does nothing to support their motion to dismiss and makes no sense in the context of evaluating the relative ease of access to documents. Obviously, the documents can be just as expediently provided to TIG in this case and whatever documents Defendants seek from TIG can be requested and provided just as easily in this action as in any other forum.

With regard to witnesses, FKI/Acco assert that: "Many of the witnesses regarding the Acco Asbestos Claims and the insurance coverage disputes are located in Pennsylvania and elsewhere, but none are in Oklahoma." Yet they identify only a single person residing in Pennsylvania that was "used as a witness in the Acco Asbestos Claims." (*Id.* at 21). TIG's action seeks legal declarations applicable to the TIG Policy issued to FKI's alleged predecessor, Acco-Babcock, Inc. It does not involve litigating issues relevant to the defense of the underlying asbestos claims, so that person's testimony is most likely irrelevant.[11] Other than that, FKI/Acco allege "other witnesses are scattered across the country, but none are in Oklahoma," noting that "FKI's Associate General Counsel at the time the Policies were placed – currently lives in Florida." (*Id.*). Given those alleged facts, the location of witnesses is also a non-factor because they would necessarily need to travel to Pennsylvania the same as they may need to travel to Oklahoma.[12]

> **2.** **The availability of compulsory process for compelling attendance of witnesses is a non-factor.**

FKI/Acco do not identify this factor as an issue. It would only be a potential issue if witnesses resided outside of the United States, which is the context in which the *forum non conveniens* doctrine is applied.

> **3.** **The cost of obtaining attendance of willing non-party witnesses is a non-factor.**

FKI/Acco do not identify this factor as an issue.

---

[11] Defendants attach a few pages of that person's deposition from an underlying asbestos case that fails to elucidate the nature of his testimony. Defendants do not otherwise establish why his testimony would be relevant to this coverage case.

[12] To the extent Defendants rely upon caselaw transferring venue under 28 U.S.C. § 1404(a), it is not applicable. (Doc. No. 40 at 20, n 79). "Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens*… District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*." *Piper Aircraft*, 454 U.S. at 253.

### 4. The possibility of a view of the premises is a non-factor.

This factor is inapplicable to this case.

### 5. Defendants have not identified other practical problems that make trial easier, more expeditious and less expensive in Pennsylvania.

FKI/Acco offer nothing new when addressing this factor, adding only that "INA agrees with Policyholders" that documents can be easily exchanged in the Pennsylvania Action because "INA has stipulated to Policyholders' amending their Complaint in the Pennsylvania Action to add TIG." The production of documents is, as admitted by FKI/Acco, a non-factor here. And the fact that INA stipulated to the amendment of the Complaint in the Pennsylvania Action does nothing to help FKI/Acco meet their burden to dismiss this action and more likely indicates only a litigation decision not to expend time and effort contesting a motion to amend.

### D. The Public Factors Do Not Support Dismissal of This Case, as This Court Will Have No Difficulty Considering TIG's Declarations Sought Against FKI (Headquartered in Tulsa) and Acco.

The public factors to be addressed are: (1) administrative difficulties of the courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Archangel*, 812 F.3d at 808.

### 1. Defendants have not shown significant administrative difficulties of the courts or burden of jury duty.

FKI/Acco address both the first and second factors together. With regard to potential administrative difficulties, they actually do not address this factor at all. They claim only that proceeding "would create a duplication of efforts" and "subject both INA and the Policyholders to

the risk of inconsistent adjudications on issues that affect their respective rights and obligations and those of TIG." (Doc. No. 40 at 20). Those are not potential administrative difficulties, which the Court is in the best position to address. For example, when the Tenth Circuit reviewed this factor in *Archangel*, it noted that the District Court "was particularly concerned about the difficulty of 'obtaining Russian interpreters for trial, applying Russian law to issues relating to the Agreement and Diamond License, and assisting the parties in their efforts to obtain witnesses for deposition or trial.'" 812 F.3d at 808.

Moreover, there would be no "duplication of efforts" or "risk of inconsistent adjudications" if TIG proceeds with this action and FKI/Acco continue with the breach of contract action they brought against INA in 2016. FKI/Acco did not seek (indeed, could not seek) any rulings with respect to the obligations of TIG under the TIG Policy and did not make TIG a party to that case. Neither did INA. Thus, a declaration by this Court regarding the excess TIG Policy (which is the sole subject of TIG's Complaint here) cannot and will not be inconsistent with the outcome of FKI/Acco' breach of contract claim against INA under the separate primary policies it issued. This lawsuit involves a different insurance contract from that upon which INA is being sued, and TIG is not seeking a declaration as to whether the coverage limits of the INA policy underlying the TIG policy have been exhausted.

FKI/Acco's midnight hour effort to join TIG to the Pennsylvania Action now puts the proverbial cart before the horse and will be contested, in part, on the basis that this case is in fact the first-filed action addressing the rights and obligations under the TIG Policy. Thus, even if "duplication of efforts" was an actual administrative difficulty or a burden on jurors to be considered, there is, in fact, no duplication. To the extent FKI/Acco assert that reproducing documents in this forum would somehow duplicate efforts because documents were already

produced in the Pennsylvania Action, in practice that amounts to little more than the press of a button to electronically transmit documents to TIG. And this would most certainly not create a "corresponding burden on this Court" which FKI/Acco fail to articulate more than offering that summary conclusion. Moreover, the interpretation of the insurance contract presents a question of law for this Court, not a question of fact for determination by a jury, such that even if some fact questions arise which may require determination by a jury, the "burden" will be minimal.

> **2.** **Defendants have not shown that Pennsylvania has a local interest in this coverage litigation decided there.**

In a bid to ignore reality, FKI/Acco claim there is no connection to Oklahoma. The connection is quite simple. Defendant FKI is headquartered in Tulsa and is the alleged successor to the Named Insured to which the TIG Policy was issued (indeed, its National Coordinating Counsel in Ohio submits their bills to the headquarters in Tulsa.[13] *See* Richards Aff. at ¶5, Ex. 1. In support of their assertion to the contrary, FKI/Acco incorrectly focus on the underlying personal injury claims rather than the coverage dispute. For example, they assert "the Acco Asbestos Claims have no connection to Oklahoma. The Acco Asbestos Claims involve bodily-injury claims allegedly arising from the asbestos-containing products of Acco, a Pennsylvania business. Not a single Underlying Claim has ever been commenced or litigated in Oklahoma." (Doc. No. 40 at 18). But the location of the underlying claims has nothing to do, for example, with the allocation methodology applicable to the TIG Policy. Even if they did, FKI/Acco admit that "most of the Acco Asbestos Claims are in West Virginia," not Pennsylvania. (Doc. No. 40 at 8).[14]

---

[13] *See also Cessna Aircraft*, 161 F.3d at 609 ("The district court, in its analysis of the public interest factors, determined that the case would not excessively burden Kansas citizens because Cessna's residence in Kansas gave the state a connection to the litigation").

[14] In fact, while they assert that some claims were brought in Pennsylvania, they fail to note that in addition to the vast majority of cases being brought in West Virginia, cases were brought in

FKI/Acco also assert that "the allegedly asbestos-containing products of Acco were all manufactured in York, Pennsylvania," concluding that, therefore, "the local Pennsylvania court has a special interest in having these controversies resolved there." It does not describe what the "special interest" is, or account for the fact that the vast majority of the products that are the subject of the underlying claims were allegedly used in other states and not Pennsylvania. Nor do FKI/Acco explain why Pennsylvania has an interest in adjudicating a declaration as to the allocation methodology applicable to an insured headquartered in Tulsa and incorporated in New York, that is so strong it amounts to a "rare" exception justifying dismissal of TIG's action.[15]

FKI/Acco also cite to *WildEarth Guardians v. Jewell*, 2016 WL 796189, at *7 (D. Colo. March 1, 2016), asserting the court held that the "local interest factor [under federal *forum-non-conveniens* law]…encompasses the important interest in having local controversies decided where the controversy exists" and that because the case involved mining in Utah "it should be heard in Utah." (Doc. No. 40 at 18). That case, however, is legally and factually inapposite. The court was deciding whether to transfer the case under 28 U.S.C. § 1404, noting that: "As compared to *forum non conveniens*, § 1404 provides a more relaxed standard for transfer and permits the district court greater discretion to transfer." *Id.* at *2. Furthermore, it did not involve an insurance company or contract dispute, but was an administrative challenge to a decision to approve a federal lease for land located entirely in Utah. Those facts have no analogous value in this dispute. Finally, the court gave less deference to the plaintiff's choice of forum because "plaintiffs have offices in

---

other states such as Ohio and Illinois, making the handful of cases brought in Pennsylvania even less impactful. Richards Aff. at ¶6, Ex. 1.

[15] The TIG Policy was issued to Acco Babcock, Inc. in Connecticut and contemplated worldwide coverage for multiple entities engaged in multi-state operations, not just one facility in Pennsylvania. *See* TIG Policy (Section IV, Policy Period, Territory. "This policy applies to occurrences happening anywhere during the policy period."). (Doc. 2-1 at 6, 10).

Colorado, but are not headquartered in Colorado," unlike FKI which is headquartered in Tulsa. *Id.* at *2.[16]

### 3. Defendants have not shown that "foreign law" applies and this Court can certainly apply domestic law.

With regard to the governing law, FKI/Acco assert that "the Court will be faced with the challenge of applying laws of a foreign state to a dispute that already is proceeding elsewhere." (Doc. No. 40 at 19). As previously addressed, the foreign law referred to, however, is that of another nation, not another state within the United States. *See supra* at I., A. This Court can certainly understand and apply, with little difficulty, the law of another state regarding the declarations sought with regard to the TIG Policy. This Court, as well as other federal courts throughout the country, regularly do so.

### E. Primary Insurer INA is Not a Necessary Party to a Declaration That Pro Rata Allocation Applies to the Excess TIG Policy.

FKI/Acco' alternative argument that this case should be dismissed because primary insurer INA is a necessary party that cannot be joined is a last-minute reversal of position that is unsupported by the facts and FKI/Acco's past litigation conduct. INA is not a necessary party to this case because the declarations TIG seeks relate to the TIG policy. Nor does the breach of contract action by FKI/Acco against INA affect TIG. They are separate disputes involving different insurance contracts. FKI/Acco and INA obviously agree TIG has nothing to do with the obligations of INA because none of them asserted, for four years, that TIG was a necessary party to the Pennsylvania Action. Pursuant to its Complaint, TIG primarily seeks a declaration that pro

---

[16] Defendants attempt to conflate the issue of venue with choice of law, insinuating that the same factors apply to determining both (they obviously do not) and that choice of law was decided in the Pennsylvania Action, which was not the case and in any event would depend upon facts specific to the issuance of the TIG Policy, not the primary INA policies. (Doc. 40 at 18, n. 72).

rata allocation applies to the excess TIG Policy. It is not seeking any declaration regarding the rights of obligations of the underlying INA primary liability policy. The policies sit at different "layers" and operate independently of each other. Despite FKI/Acco's claim now that they are involved in a "tripartite" coverage dispute, that is simply not accurate and nothing argued to the contrary has any actual support.

As the Court is no doubt aware, a party must be joined to an action under Fed. R. Civ. P. 19 if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

With regard to the first basis under Rule 19, that in INA's absence complete relief cannot be granted among TIG and FKI/Acco, the explanation provided is that "the defenses raised by INA and TIG overlap almost completely and are inextricably intertwined." (Doc. No. 40 at 23). Even if it was correct, it does nothing to support a conclusion that the Court cannot afford complete relief among TIG and FKI/Acco without INA. Obviously, two parties can be alleged to have independent obligations to a third party and raise similar defenses without either being a necessary party to the other's case.

FKI/Acco next assert that "there is a significant dispute between INA and TIG about their relative obligations to Policyholders." (Doc. No. 40 at 23). It is not clear if this is intended to support a conclusion that relief cannot be granted without INA being present, but assuming it is, it is baseless and irrelevant. There is no dispute between INA and TIG. INA did not sue or join TIG to the Pennsylvania Action and TIG does not seek any declaration as to INA's separate obligations

under its primary policies. FKI/Acco further claim that "any ruling by this Court on TIG's obligations would require a resolution of INA's obligations (*Id.*). But FKI/Acco offer no actual explanation as to how a declaration by this Court, for example, that a pro rata allocation methodology applies to any payments made by TIG under its policy requires "a resolution of INA's obligations." In fact, it does not.

FKI/Acco next allege that resolving TIG's claim for declaratory relief "potentially leave Policyholders vulnerable 'to a substantial risk of incurring . . . inconsistent obligations.'" *(Id.)*. This is not only incorrect, but conveniently omits that such a consideration is relevant only if it is first established that INA "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19. FKI/Acco do not explain what interest they believe INA has in whether pro rata allocation applies to the obligations of the TIG Policy, which sits excess to the INA primary policy. Nor do they offer any explanation as to how any of the declarations regarding the TIG Policy leaves either TIG or FKI/Acco subject to "double, multiple, or otherwise inconsistent obligations." They simply conclude that would be the case, with no support whatsoever.

In lieu of an actual argument based on the facts of this case and the relief sought by TIG in its Complaint, FKI/Acco cite to four District Court decisions outside of Oklahoma. But there is no discussion or even parenthetical explanations as to three of the cases and only one excerpted quote is offered from the fourth. A review of those decisions immediately reveals that the they do nothing to support a conclusion that INA is a necessary party under the facts of this case.

FKI/Acco rely most upon *Ins. Co. of the State of PA v. LNC Communities II, LLC*, 2011 WL

5548955, at *5 (D. Col. Aug. 23, 2011), a report and recommendation adopted by the District Court, which relied upon a decision from Colorado, *Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159 (D. Colo. 1990). Both of those decisions are readily distinguishable based on the relief sought by the insurer, which is entirely different from the declarations sought by TIG.

In *LNC*, the excess insurer sought a declaration it did not owe coverage, including because the underlying insurance had not been exhausted by payments. The insureds filed a "parallel suit" seeking a declaration that the same excess insurer owed coverage. They then sought to dismiss the insurer's suit by asserting the primary insurers, who had not been included, were necessary parties under Rule 19, but that joining them would ruin diversity.

The court determined the primary insurers were necessary parties because the excess insurer sought a declaration as to whether payments made under those policies exhausted them. In adopting the recommendation, the District Court also noted that the "Defendants assert that more may be owed under the primary policies than was paid." *Ins. Co. of State of Pennsylvania v. LNC Communities II, LLC*, 2011 WL 5553808, at *2 (D. Colo. Nov. 15, 2011). Here, TIG is not seeking a declaration as to payments made or not made under the INA primary policy, and TIG is not challenging INA's position that the INA primary underlying the TIG excess policy is exhausted. Furthermore, the court was persuaded by *Littleton*, which found that primary insurers were necessary parties "where liability of the excess insurers [is] premised on whether or not primary insurance policies issued by absent primary insurers provided coverage." TIG's Complaint, however, has nothing to do with whether the primary INA Policy provides coverage.

The *LNC* court also distinguished a decision holding that the primary carrier was not a necessary party by noting that the plaintiff in that case "did not seek a declaration apportioning liability between primary and excess insurers," but sought only a declaration regarding the excess

policies. That is precisely the situation in this action, which materially distinguishes it from the facts in *LNC* and *Littleton*. TIG is only seeking a declaration affecting the excess TIG Policy. It is not seeking any relief that requires an interpretation of the obligations of INA under its primary policies and there is no "parallel" suit in which an inconsistent declaration may result.[17]

FKI/Acco also cite to *Cont'l Cas. Co. v. Taco Bell Corp.*, 127 F. Supp. 2d 864, 870 (W.D. Mich. 2001), to support a conclusion INA is necessary because the court in that case held a primary insurer was necessary to avoid "the substantial risk of duplicative litigation." *Taco Bell* did not hold that a primary carrier was a necessary party to determine an excess insurer's rights. The case involved two primary insurers that issued consecutive policies. One of the primary insurers, Zurich, filed suit in state court and the other, Continental, filed suit in federal court. In each case, the insurer sought a declaration that it owed no coverage. The risk of inconsistent judgments was clear because: "Two different courts, this Court and the California state court, may be asked to determine when coverage was triggered. Zurich may successfully convince the California court that all or most of the injury occurred during Continental's coverage period…At the same time, Continental may convince this Court that all or most of the injury occurred during Zurich's coverage period." *Id.* at 869-870. By contrast, here, INA is a primary insurer and TIG issued an excess policy. There is no potential ruling in this case that would be inconsistent with however the breach of contract claim against INA is resolved in Pennsylvania.

---

[17] Defendants also cite *Witco Corp. v. Travelers Indem. Co.*, 1994 WL 706076, at *5 (D.N.J. Apr. 7, 1994), *aff'd*, 82 F.3d 408 (3d Cir. 1996), in support of their assertion that INA is necessary "because any findings as to the primary policy—including whether the policy is exhausted- are not binding on the absent insurer." (Doc. No. 40 at 23). But TIG is not seeking a declaration regarding exhaustion of the INA policies. The specific facts of any given dispute, including the nature of the relief sought, are paramount when determining whether a party is "necessary" under Rule 19. *See id.* at *3 ("The inquiry into whether additional parties are necessary is one that must be based heavily on the facts of each individual case.").

Even if it is determined that INA has an interest in the declarations regarding the excess TIG Policy such that the relief cannot be granted without INA's involvement, dismissal is only warranted after consideration of several factors, none of which FKI/Acco address. They shortcut their analysis by simply asserting equity requires dismissal and repeating, in summary fashion, their prior arguments. But Rule 19 states that when joinder is necessary but not feasible, the Court must consider the following before deciding that dismissal is justified: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.[18]

A review of those factors demonstrates again why INA is not a necessary party. As set forth above, a declaration regarding the TIG Policy will be adequate without INA's involvement, just as FKI/Acco may obtain adequate relief against INA in the Pennsylvania Action without including TIG. And there will be no prejudice to INA in its absence, nor will TIG or FKI/Acco be prejudiced by not including INA. Likewise, there is no need to lessen any prejudice through shaping the relief or other measures. As to the fourth factor, if TIG is forced to litigate its

[18] It is not certain that, even if INA were a necessary party, it would be aligned as a defendant so that diversity would be destroyed. The uncertainty arises mainly because FKI/Acco are unclear as to what interest INA has in the outcome of this action. It appears they are suggesting INA and TIG would dispute whether INA has exhausted, but as previously noted, that is not the case.

Defendants also assert that "it would be impractical to join INA to this action given that INA has been litigating the same issues for four years in its and Acco's home state of Pennsylvania." (Doc. No. 40 at 23). Of course, they have not been "litigating the same issues" because TIG and the separate TIG Policy have not been involved in that action. Defendants also provide no explanation as to why it would be "impractical." According to them, all the parties have accomplished in four years' time in the Pennsylvania Action is exchange documents.

declaratory judgment action in the Pennsylvania Action, it could place an additional significant burden upon TIG and the other parties given the potential applicability of the *Vale* doctrine under Pennsylvania law, which may require that every single plaintiff in the underlying asbestos actions (which are largely pending in West Virginia) be made parties to the case. *See Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 512 Pa. 290 (Pa. 1986). If required, obtaining jurisdiction over each of those individuals could prove difficult, if not impossible, which FKI/Acco fail to address when asserting the alleged simplicity with which this dispute could continue in Pennsylvania state court.

Given the foregoing, FKI/Acco fail to meet their burden to prove INA is a necessary party and this action cannot proceed without it being present. Accordingly, its motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Dismiss should be denied.

Respectfully submitted,

s/ *Phil R. Richards*
Phil R. Richards, OBA #10457
Casper J. den Harder, OBA #31536
RICHARDS & CONNOR
12th Floor, ParkCentre Building
525 South Main Street
Tulsa, Oklahoma 74103-4509
Telephone: 918/585.2394
Facsimile: 918/585.1449
Email: prichards@richardsconnor.com
        cdenharder@richardsconnor.com

*ATTORNEYS FOR PLAINTIFF*
*TIG INSURANCE COMPANY*
*(AS SUCCESSOR-IN-INTEREST TO INTERNATIONAL INSURANCE COMPANY)*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I electronically transmitted Plaintiff TIG Insurance Company's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint to the Court Clerk using the ECF system which will transmit a Notice of Electronic Filing to the following ECF registrants:

Michael J. Gibbens, Esq. – mike.gibbens@crowedunlevy.com
CROWE & DUNLEVY

and

Barry I. Buchman, Esq. - Barry.buchman@haynesboone.com
Adrian Azer, Esq. - Adrian.azer@haynesboone.com
HAYNES AND BOONE, LLP

**ATTORNEYS FOR DEFENDANTS**
**FKI INDUSTRIES INC.** AND
**ACCO MATERIAL HANDLING SOLUTIONS, INC**.

*s/ Phil R. Richards*
Phil R. Richards