## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TIG INSURANCE COMPANY as
*successor-in-interest to International*
*Insurance Company*,

                    Plaintiff,

v.

FKI INDUSTRIES, INC., *formerly*
*known as Acco Babcock, Inc*., and
ACCO MATERIAL HANDLING
SOLUTIONS, INC.,

                  Defendants.

Case No. 18-CV-00264-GKF-FHM

### OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss Plaintiff's Complaint [Doc. 39] of defendants Acco Material Handling Solutions, Inc. and FKI Industries, Inc., formerly known as Acco Babcock, Inc.[1]  For the reasons set forth below, the motion is granted.

### I.        Background/Procedural History

This is an action for declaratory judgment pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  International Insurance Company, predecessor-in-interest to plaintiff TIG Insurance Company (TIG), issued to Acco Babcock, Inc.[2] a Commercial Comprehensive Catastrophe Liability Policy, designated no. 523-198737-9, for the policy period of January 1, 1985 to January 1, 1986 (Policy).  Pursuant to the Policy, Insurer "agree[d] to pay on behalf of the insured the ultimate net loss in excess of the retained limit

---

[1] For ease of reference, the court refers to defendants, collectively, as "Acco."

[2] Acco Babcock, Inc. is now known as FKI Industries, Inc. (FKI).  Acco Material Handling Solutions, Inc. is a wholly-owned subsidiary of FKI.  [Doc. 13].

hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for: . . . Bodily Injury Liability . . . arising out of an occurrence." [Doc. 2-1, p. 3].

Since issuance of the Policy, numerous claimants have asserted claims against Acco for bodily injury allegedly caused by asbestos exposure from products distributed and/or manufactured by defendants (Underlying Claims). Acco initially sought coverage for the Underlying Claims under certain primary general liability insurance policies issued by Century Indemnity Company as successor to Insurance Company of North America (INA). INA issued general liability insurance policies to Acco Babcock and related entities during the policy periods from 1980 to 1988. The TIG Policy at issue in this case is excess to the INA policy for the policy period from January 1, 1985 to January 1, 1986. *See* [Doc. 2-1, p. 9].

On February 16, 2016, Acco, as well as The Crosby Group LLC, initiated a lawsuit, designated case no. 2016-SU-000466-89, in the Court of Common Pleas of York County, Pennsylvania against INA (Pennsylvania Case). *See* [Doc. 40-9].[3] The Pennsylvania Case is limited to the INA policies covering two policy periods: January 1, 1984 to January 1, 1985 and January 1, 1985 to January 1, 1986. Therein, Acco claimed that INA breached the insurance contracts by refusing to provide a defense for the Underlying Claims based on Acco's alleged failure to satisfy the policies' deductibles. Acco alleged that INA "has taken this position even though the Policies' deductibles are $500,000 per Policy and the Policyholders have incurred over $1,7500,000 in defense costs – an amount that is growing every day." [Doc. 40-9, p. 11, ¶ 38].

Approximately one month later, on March 18, 2016, INA initiated a declaratory judgment action in New York state court, which was designated case no. 651468/2016 (New York Case).

---

[3] The court takes judicial notice of documents of public record filed in state court cases related to this matter. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

*See* [Doc. 40-3].  Therein, INA sought a declaration that it had no duty to defend the Underlying Claims but that, if a duty to defend existed, "the exposure of each Underlying Claimant constitutes a separate occurrence under the Policies, and thus, Defendants must satisfy a separate deductible or [Self-Insured Retention] in each applicable policy period for each Underlying Claimant" and "that defense costs arising from each Underlying Claimant must be allocated over all years in which alleged bodily injury occurred."  [Doc. 40-3, pp. 17-18].  Unlike the Pennsylvania Case, the New York Case was not limited to the policy periods from January 1, 1984 to January 1, 1985 and January 1, 1985 to January 1, 1986.  Instead, in the New York Case, INA sought a declaration as to the policies covering the periods from 1980 through 1986.

Acco moved to dismiss the New York Case based on the existence of the Pennsylvania Case under a New York law that grants the state court discretion to dismiss an action when "there is another action pending between the same parties for the same cause of action in a court of any state or the United States."  [Doc. 40-4 (citing N.Y. C.P.L.R. § 3211(A)(4)].  Likewise, INA moved to dismiss the Pennsylvania Case based on the existence of the New York Case pursuant to the common-law *forum non conveniens* doctrine as codified at 42 Pa. Cons. Stat. § 5322(e).  [Doc. 40-10].  In INA's motion to dismiss the Pennsylvania Case, INA described the most "significant" issues between the parties as allocation—specifically, whether the majority or minority approach to allocation should apply—and the number of "occurrences."  [Doc. 40-10, pp. 26-27].  According to INA, *pro rata* allocation constitutes the majority approach pursuant to which "damages are allocated equitably among all years in which the bodily injury or property damage occurred.  Thus, if bodily injury or property damage spanned one-hundred years, a policyholder electing to purchase insurance only for one of those years, and consciously deciding to 'go bare' for the remaining ninety-nine, would be able to recover only 1% of the loss."  [*Id.* at p. 27].  Conversely,

pursuant to the minority joint-and-several allocation method, "one policy year is answerable up to its policy limits for all of the bodily injury or property damage, no matter how many years the policyholder chose to 'go bare,' and no matter how few years of coverage the insurer issued." [Doc. 40-10, p. 27].

On December 28, 2016, the Pennsylvania court denied INA's motion to dismiss or stay the action. [Doc. 40-14]. Subsequently, on February 28, 2017, the New York state court granted Acco's motion to dismiss "to the extent further proceedings in the action [were] stayed." [Doc. 40-8, p. 14]. The New York court ordered that either party could make an application by Order to Show Cause to vacate or modify the stay upon the final determination of the Pennsylvania Case. [*Id.*].

In early 2018, INA and Acco began discussing a potential mediation. TIG, through its third-party claims administrator, was included, and participated, in communications to schedule the mediation, which was set for May 18, 2018. *See, e.g.,* [Doc. 40-36]. Moreover, it is clear that Acco was under the impression that TIG agreed to participate in the mediation.[4] However, the day before the scheduled mediation, on May 17, 2018, TIG filed this declaratory judgment action. *See generally* [Doc. 2]. The Complaint for Declaratory Judgment includes three counts. The first count seeks a declaration that the TIG Policy does not provide coverage for bodily injury that occurred prior to the inception of the Policy (January 1, 1985), and does not provide coverage for bodily injury that occurs subsequent to the expiration of the Policy (January 1, 1986). The second count seeks a declaration that a *pro rata* allocation method based on "time on the risk" applies to allocating defense and indemnity costs for the Underlying Claims for the entire triggered period during which bodily injury takes place. Finally, the third count seeks a declaration that, under the

---

[4] The court takes no position as to whether TIG agreed to participate in the mediation.

terms, conditions, and exclusions in the Policy, TIG's obligation for defense and/or indemnity in connection with the Underlying Claims, is barred or limited for twelve additional reasons, including that the Underlying Claims are not the result of an "occurrence" and that the Underlying Claims are not covered under the Policy to the extent that defendants fail to comply with the "loss payable" condition included in the Policy.  [Doc. 2, pp. 7-10].

Following initiation of this litigation, from June 2018 to April 2020, the court granted the parties eleven separate requests for additional time to answer or otherwise plead based on counsel's representations that the parties were negotiating a resolution of the litigation.  It appears that the Pennsylvania Case was also effectively stayed during this period.  Finally, on April 9, 2020, this court ordered defendants to file an Answer or otherwise respond to TIG's Complaint by May 29, 2020.  [Doc. 38].

On May 29, 2020, defendants filed their motion to dismiss.  [Doc. 39].  The next business day, on June 1, 2020, Acco filed a First Amended Complaint in the Pennsylvania Case.  The First Amended Complaint included claims for breach of contract and anticipatory breach of contract against TIG based on TIG's failure to pay Acco's costs in defending the Underlying Claims.  TIG filed an objection to the Amended Complaint, which is currently pending before the Pennsylvania court.  INA filed an Answer to the First Amended Complaint asserting twenty-four (24) separate affirmative defenses.

In the instant motion, defendants seek dismissal of this matter under two separate theories: (1) *forum non conveniens* based on the existence of the Pennsylvania Case, and (2) failure to join an indispensable party under Fed. R. Civ. P. 19 pursuant to Fed. R. Civ. P. 12(b)(7), based on TIG's failure to include INA as a party.  [Doc. 39].  TIG responded in opposition to defendants' motion to dismiss [Doc. 42], and defendants filed a reply brief.  [Doc. 44].  In the reply brief,

defendants raise two additional doctrines which they contend support dismissal: (1) *Colorado River* abstention, and (2) *Brillhart/Mhoon* abstention. [Doc. 44, pp. 6-7]. With the court's permission, TIG filed a sur-reply. [Doc. 47]. Thus, the motion is ripe for the court's determination. The court separately considers each theory.

## II.   *Forum Non Conveniens*

A district court may dismiss a lawsuit based on *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations in original) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)). "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). The U.S. Supreme Court has stated that "[t]he common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co.,* 549 U.S. at 430 (internal citation omitted) (quoting *Am. Dredging Co.*, 510 U.S. at 449 n.2).

The Tenth Circuit has imposed "two threshold requirements for a *forum non conveniens* dismissal": (1) "an 'adequate alternative forum where the defendant is amenable to process'," *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (quoting *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.,* 703 F.3d 488, 495 (10th Cir. 2012)); and (2) that foreign law applies. *Archangel Diamond Corp. Liquidating Tr.*, 812 F.3d at

804 (citing *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993)). "If there is no adequate alternative forum *or if the issue is controlled by American law*, the *forum non conveniens* doctrine is inapplicable." *Id.* (emphasis added); *see also Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1178 (10th Cir. 2009) ("If domestic law is applicable to the case, the *forum non conveniens* doctrine is inapplicable."); *Rivendell Forest Prods., Ltd.,* 2 F.3d at 994 ("[U]nder our precedents, *forum non conveniens* is not applicable if American law controls."). Thus, district courts in this Circuit have declined to apply *forum non conveniens* where the law of another state applies and the case lacks an international element. *See Lexington Ins. Co. v. Newbern Fabricating, Inc.*, No. 14-CV-0610-CVE-TLW, 2015 WL 3911305, at *7 (N.D. Okla. June 25, 2015); *Brannan v. Unified Sch. Dist. 211*, No. 11-1128-EFM, 2011 WL 3203916, at *2 (D. Kan. July 27, 2011); *MBF Tr. v. Castaway Mfg., Inc.*, No. 10-CV-402-GKF-FHM, 2010 WL 4636704, at *4 (N.D. Okla. Nov. 4, 2010); *Amphibious Attractions, LLC v. Trolley Boats, LLC*, No. 05-CV-029-B, 2005 WL 8155360, at *4 (D. Wyo. July 7, 2005).[5]

Here, the parties do not contend that international law applies to interpret the Policy. Rather, it is clear that American law, regardless of which individual state, will apply to all of TIG's requests for declaratory relief. Although the Supreme Court has suggested that, "perhaps in rare instances," *forum non conveniens* may apply where the alternative forum is an American state court, Acco offers no authority to indicate that the Court's statement overruled the Tenth Circuit's

---

[5] The court notes that defendants cite two cases from district courts in the Tenth Circuit considering application of *forum non conveniens* in cases lacking an international element. *See* [Doc. 40, p. 24 (citing *Cass v. Balboa Cap. Corp.*, No. CIV-13-483-SPS, 2015 WL 1428076, at **3-4 (E.D. Okla. Mar. 27, 2015))]; [Doc. 44, p. 5 (citing *Union Pac. R.R. Co. v. Rodella*, No. CIV-04-0376-LAM-KBM, 2004 WL 7337595, at *3 (D.N.M. Dec. 22, 2014))]. However, in *Cass,* the court was considering the enforceability of a forum selection provision. This case does not involve a forum selection provision and therefore *Cass* is distinguishable. *Compare Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). In *Rodella*, the court did not discuss the Tenth Circuit requirement of application of foreign law. *Rodella*, 2004 WL 7337595, at *3. For this reason, *Rodella* is not persuasive.

threshold requirements. Rather, the Tenth Circuit has continued to apply the two requirements in the thirteen years since *Sinochem*. *See, e.g., Archangel Diamond Corp. Liquidating Tr.,* 812 F.3d at 804. Further, the Tenth Circuit's threshold requirements are not inconsistent with *Sinochem*. *See id.* at 805-06 (*forum non conveniens* may apply when some of the claims are based on U.S. law and some are based on international law). Applying binding Tenth Circuit precedent—as the court must—because domestic law applies, *forum non conveniens* is inapplicable.

### III.    Failure to Join a Party Under Rule 19

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action for "failure to join a party under Rule 19." The Tenth Circuit has recognized that "Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).

*First*, "the court must find that a prospective party is 'required to be joined' under Rule 19(a)." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012). Rule 19(a):

(a)    Persons Required to Be Joined if Feasible

(1)    Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A)    in that person's absence, the court cannot accord complete relief among existing parties; or

(B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)    as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

8

Fed. R. Civ. P. 19(a).

*Second*, if the absent person or entity was required to be joined, "the court must then determine whether joinder is 'feasible.'" *Norton*, 248 F.3d at 997.

*Third and finally*, if the required person or entity cannot be feasibly joined, "the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot 'in equity and good conscience' proceed in that person's absence." *Harnsberger,* 697 F.3d at 1278-79.  The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  If the action cannot "in equity and good conscience " proceed without the absent person or entity, the action "should be dismissed." *Id.*

A.     *Required Party*

The court first considers whether, in INA's absence, the court cannot accord complete relief among the existing parties such that INA is a required party under Rule 19(a)(1)(A).[6]

In coverage cases between an insured and excess insurer, other federal district courts have held that complete relief cannot be afforded absent the primary insurer because the primary

---

[6] The parties do not contend that INA has claimed an interest in this litigation.

policy's limits must first exhaust before the excess policy's coverage applies.  *See City of Littleton v. Com. Union Assurance Cos.,* 133 F.R.D. 159, 163 (D. Colo. 1990) (internal citation omitted) ("In a declaratory judgment action, all interested parties should be joined and judgment should not be entered unless it disposes of a controversy and serves a useful purpose.  Declaratory judgment here would promote neither end."); *Ins. Co. of State of Pa. v. LNC Cmtys. II, LLL,* No. 11-CV-00649-MSK-KMT, 2011 WL 5548955, at *5 (D. Colo. Aug. 23, 2011), *report and recommendation adopted*, 2011 WL 5553808 (D. Colo. Nov. 15, 2011) (internal quotations omitted) ("*Littleton* has garnered a respectable following for its holding that primary insurers are required parties where liability of the excess insurers [is] premised on whether or not primary insurance policies issued by absent primary insurers provided coverage."); *Witco Corp. v. Travelers Indem. Co*., No. 93-4709, 1994 WL 706076, at **3-4 (D.N.J. Apr. 7, 1994) ("The moving defendants are 'excess liability insurers,' who issued policies specifically premised on the circumstance that the insurers issuing the underlying policies would be liable in the first instance, and that the excess liability insurers would not become liable unless and until the primary insurers or lower-level excess insurers had paid claims up to the maximum amount of coverage provided under their policies.  For this reason, the existing defendants cannot be afforded complete relief unless [insurers] are joined; the existence of and the extent of the moving defendants' liability is necessarily dependent on the magnitude of the underlying insurers' liability.").  As in those cases, the Policy here does not obligate TIG to assume the insureds' defense until after exhaustion of the underlying insurance—the INA policy.  [Doc. 2-1, pp. 4, 7].

TIG argues *City of Littleton* and its progeny are distinguishable, primarily because "TIG is only seeking a declaration affecting the excess TIG Policy [and] it is not seeking any relief that requires an interpretation of the obligations of INA under its primary policy."  [Doc. 42, p. 24].

TIG further states it "is not challenging INA's position that the INA primary underlying the TIG excess policy is exhausted."[7]  [Doc. 42, p. 23].  The court is not persuaded for two reasons.

First, under the facts and circumstances presented here, TIG's statement that it is not challenging INA's position that the INA primary policy underlying the TIG excess policy has exhausted is insufficient to render TIG's obligations under the Policy non-contingent.[8]  This is not a case where another court has issued a judgment as to INA's obligations under the underlying policy or INA has entered into a settlement agreement with the insureds (or TIG) as to the coverage provided.  Instead, INA continues to actively contest coverage in the Pennsylvania Case by asserting affirmative defenses to the breach of contract claim.  As recently as July 31, 2020, INA filed an Answer to Acco and FKI's First Amended Complaint in which it asserts affirmative defenses including that the Underlying Claims do not fall within the scope of the insuring agreement, various policy exclusions apply, any "bodily injury" did not occur during the policy period, and that the INA policies are not required to respond (if coverage is otherwise established) until after proper exhaustion of all deductibles, retained limits, and/or self-insured retentions have been exceeded.  Coverage under the TIG Policy is not triggered until INA's obligations have been determined.  *See City of Littleton*, 133 F.R.D. at 163.

---

[7] Insofar as TIG argues that "FKI/Acco and INA obviously agree TIG has nothing to do with the obligations of INA because none of them asserted, for four years, that TIG was a necessary party to the Pennsylvania Action," [Doc. 42, p. 20], TIG compares apples and oranges.  It's unlikely that any claim against TIG would have been ripe until the INA primary policy limits were exhausted.  Further, the court notes that a large portion of that four-year period appears to have been spent in settlement negotiations, resulting in an effective stay of the Pennsylvania Case.

[8] Further, TIG's statement is not entirely consistent with its pleading.  TIG's requested relief includes a declaration that the Underlying Claims are not covered under the TIG Policy to the extent that defendants failed to comply with the "loss payable" condition contained in the TIG Policy.  [Doc. 2, p. 10].  The "loss payable" provision provides, in part, that TIG's liability "shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit," defined as the greater of the underlying policy limits or self-insured retention.  [Doc. 2-1, pp. 6-7].

Second, TIG's requested relief implicates the provisions of the INA policies. TIG primarily seeks a declaration that its duties of defense and indemnity under the Policy are limited to TIG's *pro rata* share of the defense and indemnity costs for the period of the TIG Policy (January 1, 1985 to January 1, 1986) where all underlying and other coverage has been properly exhausted and for periods where defendants (or their predecessors) were uninsured, underinsured, or self-insured, and/or for lost or missing policy periods, or where defendants' insurers are insolvent, in liquidation, or otherwise unable to pay claims, and where one or more of defendants' insurers have no obligation to defend, pay defense costs, and/or pay indemnity coverage. [Doc. 2, p. 11]. TIG's request for allocation necessarily implicates INA's interests as the primary insurer during the periods from 1980 to 1985 or 1986 to 1988, periods in which an argument could be made that defendants were uninsured/underinsured. Insofar as TIG argues that it is an excess insurer and therefore not on the same "layer" of insurance as INA, a declaration as to the appropriate method of allocation limited to TIG—who provided excess coverage for only one policy period—would neither dispose of the controversy or serve a useful purpose. *See City of Littleton,* 133 F.R.D. at 163.

In reaching its conclusion herein, the court does not set forth a bright-line rule that primary insurers are required parties to coverage actions between an excess insurer and an insured. Rather, based on the facts of this case, the court concludes that INA is required to be joined under Fed. R. Civ. P. 19(a).

B.    *Feasibility of Joinder*

Joinder under Rule 19 is feasible if the absent person or entity is subject to service of process and the addition of the absentee will not deprive the court of subject matter jurisdiction. *See* Fed. R. Civ. P. 19(a); *Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys.,*

12

*II, LLC*., 315 F.R.D. 601, 609 (D. Kan. 2016).  Defendants argue that INA cannot be feasibly joined in this action because joinder would destroy diversity.  [Doc. 42, p. 25 n.18].  TIG does not directly contradict defendants but, in footnote, states that it is not certain that INA would be aligned so as to defeat diversity.  Thus, the court must consider the proper alignment of the parties.  *See U.S. Fire Ins. Co. v. HC-Rockrimmon, L.L.C.,* 190 F.R.D. 575, 576 n.1 (D. Colo. 1999).  Based on the material provided, there does not appear to be any dispute between TIG and INA except, perhaps, with regard to exhaustion.  Rather, a dispute clearly exists between INA and Acco/FKI.  Thus, the interests of INA are properly aligned with plaintiff TIG.  Because would-be-plaintiff INA and defendant Acco are Pennsylvania citizens for purposes of the court's diversity jurisdiction, INA's joinder would destroy diversity and deprive the court of subject matter jurisdiction.  Thus, joinder under Rule 19 is not feasible.

C.      *Equity and Good Conscience*

Finally, the court considers whether INA's joinder is of such importance that this litigation cannot "in equity and good conscience" proceed in its absence.  *See* Fed. R. Civ. P. 19(b).  To do so, the court considers the four Fed. R. Civ. P. 19(b) factors.

1.      Prejudice to INA or the Existing Parties

Rule 19(b) first requires the court to consider the extent to which a judgment rendered in INA's absence might prejudice INA or the existing parties.  "This prejudice test is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit."  *Harnsberger,* 697 F.3d at 1282.  Thus, prejudice under this factor "is not limited to circumstances where that party will be technically bound by a judgment," but, instead, "looks to whether a litigant's interests will be impaired in a practical sense if an action proceeds in the

person's absence." *LNC Cmtys. II, LLC*, 2011 WL 5548955, at *6 (quoting *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 404 (N.D. Ill. 1994)).

The court concludes that INA and the defendant insureds' interests will be impaired in a practical sense if the litigation continues in INA's absence.   TIG seeks a determination as to whether *pro rata* allocation applies.   In the Pennsylvania Case, INA also argues that *pro rata* allocation applies.   The INA Policy includes similar language to that included in the TIG Policy at issue.   The existing defendants, as the insureds, would be prejudiced and subject to conflicting obligations if this court and the Pennsylvania Court reached opposing conclusions as to the applicability of *pro rata* distribution.   Practical prejudice may also arise to INA.   For example, if this court should conclude that *pro rata* distribution did not apply, the Pennsylvania court may be more inclined to reach the same conclusion.   *See City of Littleton*, 133 F.R.D. at 164.   Similarly, to adjudicate Count 3 of TIG's Complaint, the court would have to reach a conclusion as to whether the Underlying Claims qualified as an "occurrence" and whether the "bodily injury" occurred during the Policy Period.   In its Answer to the First Amended Complaint in the Pennsylvania Case, INA asserts that the bodily injury was not caused by an "occurrence" and that it occurred outside the relevant policy period under similar policy language.   *Compare* [Doc. 40-17, p. 4] *with* [Doc. 2-1, p. 5].   Again, "[i]t is not inconceivable that this court and [the Pennsylvania Court] could 'reach different conclusions on these matters, thus leaving some parties subject to conflicting orders.'"   *LNC Cmtys. II, LLC*, 2011 WL 5548955, at *9 (quoting *Littleton*, 133 F.R.D. at 159). For these reasons, the court concludes that a judgment in this case might prejudice INA or the defendants, and this factor favors dismissal.[9]

---

[9] For this reason, the court also concludes that INA is a required party pursuant to Fed. R. Civ. P. 19(a)(1)(B).

2.     Shaping Relief

Rule 19(b) next requires the court to consider the extent to which any prejudice could be mitigated by protective provisions in the judgment, shaping the relief, or other measures.  Fed. R. Civ. P. 19(b)(2).  TIG offers no proposals as to how the court could shape the relief to avoid prejudice, stating only that "there is no need to lessen any prejudice through shaping the relief or other measures."  [Doc. 42, p. 25].  However, as set forth above, INA and defendants may potentially be prejudiced by the failure to include INA.

The court could avoid entering judgment as to the TIG Policy until after resolution of the obligations under the primary policies in the Pennsylvania Case.  However, this is neither helpful nor efficient.  *See City of Littleton*, 133 F.R.D. at 165.  Further, the court could attempt to avoid the issues that implicate similar policy provisions in the INA Policy, but this would not afford TIG complete relief.  *See LNC Cmtys. II, LLC*, 2011 WL 5548955, at *11.  Thus, the court cannot reasonably shape the relief to avoid the potential prejudice and this factor favors dismissal.

3.     Adequacy of Judgment

The third Rule 19(b) factor is whether a judgment rendered in INA's absence would be adequate.  Of this factor, this Tenth Circuit has stated:

> Rule 19(b)(3)'s instruction to consider "whether a judgment rendered in the person's absence would be adequate" is not intended to address the adequacy of the judgment from the plaintiff's point of view.  Rather, the factor is intended to address the adequacy of the dispute's resolution  This factor is concerned with the interest of the courts and the public in complete, consistent and efficient settlement of controversies.  We read the Rule's third criterion . . . to refer to this public stake in settling disputes by wholes, whenever possible . . . ."

*Harnsberger,* 697 F.3d at 1283 (internal citations and quotations omitted).  Permitting this litigation to continue does not further the public's interest in avoiding piece-meal litigation and settling disputes as a whole.  There is nothing efficient in requiring defendants to litigate what are

effectively the same legal issues—despite some differences in policy language—in two forums. Thus, this factor weighs in favor of dismissal.

### 4.   Adequate Remedy

Finally, the court must consider whether TIG would have an adequate remedy if this case was dismissed for nonjoinder.  TIG argues that the Pennsylvania Case is inadequate because "it could place an additional significant burden upon TIG and the other parties given the potential applicability of the *Vale* doctrine under Pennsylvania law, which may require that every single plaintiff in the underlying asbestos actions (which are largely pending in West Virginia) be made parties to the case. *See Vale Chemical Co. v. Hartford Accident and Indemnity Co*., 512 Pa. 290 (Pa. 1986)." [Doc. 42, p. 26].  However, as recognized by the court in the New York case, "[c]ourts have found in response to this argument, that although 'Vale's requirement provides an insurmountable barrier to institution of a declaratory judgment action in Pennsylvania, there has nevertheless been a feeling of satisfaction 'that adequate relief can be obtained by [TIG] in breach of contract actions instituted in Pennsylvania courts. *Century Indem. Co. v. Mine Safety Appliances Co*., 398 N.J. Super. 422, 429." [Doc. 40-8, p. 13].  Thus, an adequate remedy exists in the form of the Pennsylvania Case and this factor weighs in favor of dismissal.

Based on the foregoing, the Rule 19(b) factors all weigh in favor of dismissal.  Thus, INA is a required party under Rule 19(a), and the court cannot "in equity and good conscience" proceed without INA's presence.  Thus, the action should be dismissed, *see* Fed. R. Civ. P. 19(b), and defendants' motion to dismiss is granted.

## IV.    *Brillhart/Mhoon*[10]

In addition to the Rule 19 analysis, the court concludes that this litigation should be dismissed because the *Brillhart/Mhoon* factors weigh against this court exercising jurisdiction.

TIG seeks only declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, in this matter.  Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  The U.S. Supreme Court has made clear that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'")).  In deciding whether to hear a declaratory judgment action, the court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

---

[10] As previously stated, defendants raised the potential applicability of *Brillhart/Mhoon* for the first time in their reply brief.  Although the court generally does not consider matters raised for the first time in reply, the court permitted TIG to file a surreply.  [Doc. 47].  Thus, the court considers *Brillhart/Mhoon*'s applicability.

*Mhoon*, 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

The court considers the first and second factors together.  The Tenth Circuit has stated "that the inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court."  *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002).

Applying the *Mhoon/Brillhart* factors, the Tenth Circuit has previously concluded that a district court did not abuse its discretion in refusing to exercise its declaratory judgment jurisdiction based on the existence of a state court action for breach of the insurance contract.  *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995).  In that case, Philip Runyon sought a defense and indemnity for a tort suit filed against him by his co-workers under a professional liability insurance policy issued to him by St. Paul Fire and Marine Insurance Company.  *Id.* at 1168.  Runyon informed St. Paul of his intent to file a civil lawsuit for breach of contract and bad faith in Oklahoma state court if St. Paul did not assume his defense by February 18, 1994.  On February 17, 1994, St. Paul initiated a declaratory judgment action in federal court. *Id.*  On appeal of the district court's decision to decline jurisdiction, the Tenth Circuit stated:

> The district court, in this case, refused jurisdiction because the same issues were involved in the pending state proceedings, and therefore, there existed a more effective alternative remedy.
>
> The parties have a pending state contract action, which incorporates the identical issue involved in the declaratory judgment action.  Mr. Runyon's state breach of contract complaint against St. Paul alleges the coworkers' lawsuit is a "covered claim" pursuant to the insurance policy.  In resolving the insurance contract, the state court will necessarily determine rights and obligations under the contract.  St. Paul is seeking a declaration by the federal court that the coworkers' lawsuit is not a covered claim.  The issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action—whether Mr. Runyon's insurance contract with St. Paul protects him from the coworkers' lawsuit.  Because the state court will determine, under state contract law, whether

> the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract. *See Brillhart v. Excess Ins. Co*., 316 U.S. 491, 495, 62 S. Ct. 1173, 1176, 86 L.Ed. 1620 (1942).

*Id.* at 1169.

In this case, TIG seeks a declaratory judgment as to its obligation to provide a defense for the Underlying Claims and, if so, the extent of that duty. In the Pennsylvania Case, defendants assert that TIG breached the Policy by failing to provide a defense for the Underlying Claims. In resolving the breach of contract claim, the Pennsylvania court will necessarily determine TIG's rights and obligations under the insurance contract. TIG may assert any coverage defenses or its argument in favor of *pro rata* allocation as affirmative defenses therein.

Further, other district courts in this Circuit have held that, where a court could decline jurisdiction in favor of a consolidated or more efficient state proceeding, the first two factors favor dismissal. *See Indian Harbor Ins. Co. v. Coombes Trucking, Inc*., No. 20-156-JAP-GJF, 2020 WL 3542300, at *4 (D.N.M. June 30, 2020) (citing *City of Las Cruces*, 289 F.3d at 1187); *see also Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc*., 148 F. Supp. 3d 1206, 1226 (D.N.M. 2015) ("If the Court's ruling on the declaratory action would only partially resolve the parties' dispute, the Tenth Circuit has stated that the state court could better resolve the action."). The Pennsylvania Case necessarily requires a determination of the applicability of *pro rata* or "time on the risk" allocation, as well as whether and the extent to which "bodily injury" caused by an "occurrence"—terms similarly defined in the INA policy and TIG Policy—occurred during the relevant policy period.[11] TIG seeks a determination of these same issues in this litigation. "A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-

---

[11] Insofar as TIG asserts that the court could shape its judgment so as to not have to determine when the "bodily injury" caused by an "occurrence" occurred, such a ruling would not provide complete relief as to the duty to indemnify and therefore would be of little use.

dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Cont'l Cas. Co.,* 866 F.2d 1269, 1276 (10th Cir. 1989). Further, the Pennsylvania Case includes an additional party, INA.[12] Thus, this litigation is "unnecessarily duplicative and uneconomical." *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n,* 685 F.3d 977, 982 (10th Cir. 2012). Resolution by the Pennsylvania state court is more efficient and therefore the first and second *Brillhart/Mhoon* factors weigh against jurisdiction.

Pursuant to the third factor, the court should consider whether this declaratory judgment action is being used merely for the purpose of "procedural fencing." TIG argues that this factor weighs in its favor "given that FKI/Acco waited until two years after TIG filed this case to join TIG to the state court action." [Doc. 47, p. 5]. However, TIG's statement is perhaps an oversimplification. INA first filed the Pennsylvania Case in 2016, although TIG was not a party at that time. It is unclear to the court when INA represented that it had exhausted its policy limits for the January 1, 1985 to January 1, 1986 policy period, so as to trigger any duty under the TIG Policy. Regardless, as previously stated, a mediation directed to coverage for the Underlying Claims was scheduled for May 18, 2018, and it appears that Acco was under the impression that TIG intended to attend and "meaningfully participate." TIG filed this declaratory judgment action the day before the scheduled mediation. Finally, since filing this litigation, TIG has represented to this court in no less than ten (10) separate motions that the parties were involved in settlement negotiations. *See* [Doc. 10, Doc. 17, Doc. 19, Doc. 21, Doc. 25, Doc. 27, Doc. 29, Doc. 31, Doc. 33, Doc. 35; Doc. 37]. Under the circumstances, it was not unreasonable that Acco did not join TIG to the state court action until recently. Moreover, the timing of the instant litigation is

---

[12] For this reason, *State Farm Fire & Cas. Ins. Co. v. Jun Shao,* No. 19-CV-0496-CVE-FHM, 2019 WL 6465319 (N.D. Okla. Dec. 2, 2019), on which TIG relies, is distinguishable. *Jun Shao* did not involve an excess insurer and was instead limited to a primary insurer and its insured.

somewhat suspect for being filed the day before the scheduled mediation.  Regardless, based on the contentious procedural history of this matter, this factor is neutral.

With regard to the fourth factor, the court must consider "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  *Mhoon,* 31 F.3d at 983.  State law—whether Pennsylvania, Connecticut, or New York—will govern the interpretation of the TIG Policy.  Coverage does not implicate any federal law or concerns.  Thus, this factor weighs heavily against the court exercising jurisdiction in this matter.  *See Brillhart,* 316 U.S. at 495-96 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."),

Finally, as to the fifth factor, as discussed above, a more effective alternative remedy exists—the Pennsylvania Case.  *See Valley Forge Ins. Co. v. ALK Enters., LLC*, No. 17-CV-501-GKF-JFJ, 2017 WL 6551389, at *3 (N.D. Okla. Oct. 27, 2017)

For the reasons discussed above, on balance, the *Brillhart/Mhoon* factors weigh against the court exercising jurisdiction, and the court declines to do so.[13]

## V.    Conclusion

WHEREFORE, the Motion to Dismiss Plaintiff's Complaint [Doc. 39] of defendants Acco Material Handling Solutions, Inc. and FKI Industries Inc., formerly known as Acco Babcock, Inc.,

---

[13] Because the court concludes that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(7) and based on application of the *Brillhart/Mhoon* factors, the court does not consider the applicability of the *Colorado River* abstention doctrine.

is granted.  The court orders that this case be dismissed without prejudice.  *See Harnsberger*, 697

F.3d at 1284.

IT IS SO ORDERED this 6th day of October, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE